UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x

STEVIE B. TATUM,

               Plaintiff,

          v.

THE CITY OF NEW YORK, THE NEW YORK CITY
DEPARTMENT OF CORRECTION, NEW YORK CITY
DEPARTMENT OF CORRECTION COMMISSIONER
MARTIN F. HORN, ARDC WARDEN PETER
CURCIO, CORRECTION OFFICER RENEE
JACKSON, AND CORRECTION CAPTAIN ARTURO
RODRIGUEZ, INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES, TERREEM MARTIN,
LEONARD CHIN AND JOHN DOE INMATES 1
THROUGH 8,

               Defendants.

------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/09

06 Cv. 4290 (BSJ)(GWG)

**OPINION AND ORDER**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

    Plaintiff Stevie B. Tatum ("Tatum") brought this action

under 42 U.S.C. § 1983, asserting claims for deliberate

indifference to his welfare, safety and medical need, use of

excessive force, and conspiracy, as well as related state law

claims.  Pursuant to Rule 56 of the Federal Rules of Civil

Procedure, defendants the City of New York ("City"), New York

City Department of Correction ("DOC"),[1] Commissioner Martin F.

Horn ("Commissioner Horn"), ARDC Warden Peter Curcio ("Warden

Curcio"), Correction Officer Renee Jackson ("Officer Jackson"),

and Captain Arturo Rodriguez ("Captain Rodriguez")(collectively,

---

[1] With Tatum's consent (See Memorandum of Law In Opposition to Defendants'
Motion for Summary Judgment (Pl.'s Mem.) at 15), the Court dismisses his
claims against the DOC.

"Defendants") move for summary judgment.  For the reasons that follow, Defendants' motion is DENIED in part and GRANTED in part.

**BACKGROUND**

**I.   Local Rule 56.1**

Initially, the Court notes Tatum's failure to comply with Local Rule 56.1.  That rule requires a party moving for summary judgment in this district to submit, with its other motion papers, a separate statement of numbered material facts as to which the moving party contends there is no genuine issue to be tried.  Pursuant to that Rule, Defendants served Tatum with its Statement Pursuant to Local Rule 56.1 ("Defs.' R. 56.1 Stmt.").

Tatum was correspondingly required to submit a counterstatement responding to each numbered paragraph in Defs.' R. 56.1 Stmt.  Rather than doing so, however, Tatum only responded to five of Defendants' forty-six paragraphs.  Moreover, Tatum fails to provide evidentiary support for those responses – the deposition testimony to which he cites  does not support the propositions for which it is cited.

Rule 56.1 further provides that, to the extent that Tatum has failed "to controvert a fact . . . set forth in [Defs.' R. 56.1 Stmt.], that fact will be deemed admitted."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

Nonetheless, while the Court "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements" - especially in light of Tatum's representation by counsel - "it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). The Court has exercised that discretion. Rather than disadvantage Tatum because of the inadequacy of his submissions, the Court "will consider the totality of the parties' submissions in identifying disputed material facts, and will construe those disputed facts in plaintiff's favor as is appropriate on summary judgment." Allen v. City of New York, No. 02 Civ. 4373 (RJH) (DF), 2006 U.S. Dist. LEXIS 95802, at *27 (S.D.N.Y. Sept. 29, 2006).

## II.  The Facts

This action arises out of an incident that occurred on the morning of April 29, 2005. On that date, while on trial for a charge of driving while intoxicated, Tatum was detained at the Adolescent Reception and Detention Center on Rikers Island (the "ARDC"). For the duration of his incarceration, Tatum was housed in Mod 2-B, a dormitory unit containing 50 single-level beds. Officer Jackson was assigned to supervise that unit, as well as Mod 2-A, a separate room that contained 50 additional beds, from 11:00 PM to 7:00 AM on that date. Upon his return

3

from court that morning, shortly before 4:00 AM, Tatum found Officer Jackson conversing with a group of inmates and got into bed.  While Tatum was in bed, defendant Terreem Martin ("Inmate Martin"), an inmate, told Officer Jackson that Tatum was "popping shit to you."  In response, Officer Jackson became "irate" and "came charging" at Tatum, stating, "who is he, who the fuck is he talking to, he doesn't know me," and "who the hell do you think you are?  You don't disrespect me."  An inmate "put his hand up to block her forward movement," but she said "no.  This motherfucker can't talk to me like that."  (Defs.' R. 56.1 Stmt.,[2] ¶¶ 9-14; Transcript of the Deposition of Stevie B. Tatum ("Tatum Dep."),[3] Attorney Affirmation and Rule 56.1 Statement ("Margulis-Ohnuma Aff."), Ex. B, at 55-56.)

At that point, at least two inmates jumped on Tatum and began to punch and kick him.  (Defs.' R. 56.1 Stmt., ¶¶15-17; Tatum Dep., at 59.)  Tatum claims that Officer Jackson took no action to stop the assault, but he testified that he "wasn't paying attention" to her location during the attack because he "was too busy guarding myself."  (Defs.' R. 56.1 Stmt., ¶¶25-26; Tatum Dep., at 62.)  Officer Jackson testified that she told the inmates to stop fighting, and that they complied; she reported

---

[2] The Court only cites Defs.' R. 56.1 Stmt for facts that are supported by the evidence to which they cite.
[3] Neither party has provided the Court with complete transcripts of any deposition.  Accordingly, the Court has reviewed only the excerpted testimony that the parties have chosen to present.

4

the same on two DOC reports dated April 29, 2005.  (Defs.' R.
56.1 Stmt., ¶18; Notice of Infraction, Declaration of Johana
Castro ("Castro Decl."), Ex. L; Report of Infraction, Castro
Decl., Ex. M.)  According to her own testimony, aside from her
issuance of verbal commands, Officer Jackson did nothing to
"control the situation" or to protect Tatum.  (Jackson Dep., at
50).

        The incident lasted "maybe a minute or so," after which
Tatum got up and went into the bathroom.  (Defs.' R. 56.1 Stmt.,
¶20.)  Before Tatum went to the bathroom, he testified, Officer
Jackson "was still talking to whoever she was talking to,
cussing and saying whatever she was saying," "talking excitedly
about nothing," "agitated over nothing."  (Tatum Dep., at 65.)

        "All of a sudden," Tatum testified, his assailants "came
charging" into the bathroom and attacked him again.  Defendant
Leonard Chin ("Inmate Chin") and Inmate Martin both punched
Tatum in the face, causing Tatum to fall back and hit his head
on the commode.  Tatum claims that Officer Jackson took no
action to stop this assault; the record does not include any
evidence to the contrary.  Another correction officer, who was
posted in a nearby bullpen, witnessed the attack and called for
a "response team," which arrived and removed Tatum from the
area.  Before the incident, Tatum had no reason to believe that
he was in danger of being assaulted; he had neither received

                                5

threats nor requested separation from other inmates, and he had never been involved in a fight, altercation, or dispute of any kind at ARDC.  (Defs.' R. 56.1 Stmt., ¶¶ 20-29.)

Tatum alleges that Captain Rodriguez, who was in charge when the response team arrived at the scene, was verbally abusive, telling Tatum, "you're not going anywhere, stay your fucking ass right there."  Approximately ten minutes after its arrival, Captain Rodriguez's team took Tatum to the infirmary for treatment; Tatum asserts that, for those ten minutes, Captain Rodriguez deliberately delayed treatment for the very purpose of causing pain.  At the infirmary, Tatum complained of pain in his jaw and lower back.  A doctor gave Tatum antibiotics, aspirin, and an ice-pack, and recommended that Tatum go to a hospital to see whether he had suffered a fracture.  Instead of following that recommendation, Tatum chose to go to court for the conclusion of his trial.  (Defs.' R. 56.1 Stmt., ¶¶ 30-40.)

Tatum took a 6:30 AM bus to court, resumed trial, and was acquitted.  After his acquittal, he sought medical treatment at NYU Downtown Hospital, where he was admitted at 11:45 AM and diagnosed with a fractured mandible.  (Defs.' R. 56.1 Stmt., ¶¶ 40-42.)  Defendants present evidence that, as a result of the incident, Officer Jackson issued Notices and Reports of Infraction to Tatum and Inmates Martin and Chin, and that

6

Inmates Martin and Chin were reprimanded on May 4, 2005.[4]
(Defs.' R. 56.1 Stmt., ¶¶ 44-46.)[5]

An "Injury to Inmate Report" bearing Officer Jackson's name
and signature indicates that she witnessed Tatum's injuries, and
includes an investigatory summary "based on [Jackson's]
eyewitness report." (Margulis-Ohnuma Aff., Ex. D; Castro
Decl., Ex. J). She later testified, however, that the signature
was not hers, "because that's not my handwriting, because I
didn't write that report;" that she did not remember whether she
witnessed the injury; and that "[a]ll I remember is this -
writing up this report – notice of infraction, but this is not
my handwriting . . . This is not my signature." (Jackson Dep.,
at 110-111, 113-114.) The investigatory summary states,
"patient referred to Urgicare for x-ray but patient has court
this A.M. and he may go home so it's impotant [sic] that he goes
to court instead." (Margulis-Ohnuma Aff., Ex. D.) A section of
the Injury to Inmate Report titled "Tour Commander's Review"
states, "DOC staff did not use force to terminate this fight . .
. The Captain did not find out the cause of fight." (Id.)

---

[4] Tatum's infraction was not adjudicated because, upon his acquittal at trial
on April 29, 2005, he was released from custody. (Defs.' R. 56.1 Stmt., ¶
45.)
[5] Tatum contests the admissibility and veracity of this evidence, but he does
not articulate any reason. (Plaintiff's Rule 56.1 Statement, ¶¶ 43-44, 46.)

Tatum filed this action on June 7, 2006, an amended
complaint on December 18, 2006, and a second amended complaint
on August 16, 2007.

## DISCUSSION

Pursuant to Section 1983, Tatum asserts federal claims, for
(a) deliberate indifference to welfare and safety - failure to
protect, (b) deliberate indifference to medical need, (c)
conspiracy and excessive force, and (d) supervisory and
municipal liability, in violation of the Fourth, Fifth, Eighth
and Fourteenth Amendments to the United States Constitution.  He
asserts related state law claims for (a) negligent hiring, (b)
assault and battery, and (c) negligence.  The Court addresses
each of these claims in turn.[6]

## I.    Standard of Review – Summary Judgment

To succeed on a motion for summary judgment, a party must
show that the absence of material and genuine factual issues
dictates judgment as a matter of law.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).  In this context, the
Court "is not to resolve issues of fact but only to determine
whether there is a genuine triable issue as to a material fact."
Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).
The "evidence of the nonmovant is to be believed and all

---

[6] Tatum asserts additional Section 1983 claims for conspiracy and excessive
force and state law claims for assault and battery against Inmates Martin and
Chin, "John Doe Inmates 1 and possibly others" (Compl. ¶¶ 57-59, 74-77).
These defendants have not moved for summary judgment.

justifiable inferences are to be drawn in his favor." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)

        That non-moving party, however, "may not rest upon mere
conclusory allegations or denials, but must bring forward some
affirmative indication that [its] version of relevant events is
not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d
98, 101 (2d Cir. 1997) (citations and quotations omitted).
Evidentiary submissions relating to a summary judgment motion
must adduce facts that would be admissible in evidence. Fed. R.
Civ. P. 56(e).

## II.  **Section 1983**

        To prevail on a Section 1983 claim, a plaintiff must
demonstrate a violation of his Constitutional or statutory
rights by a person acting under the color of state law. 42
U.S.C. § 1983.  Defendants do not contest that, at all times
relevant to this action, Officer Jackson and Captain Rodriguez
acted under color of state law.

### a. **Failure to Protect**

        Tatum claims that Officer Jackson's failure to prevent or
stop his assault reflected deliberate indifference to his
welfare and safety, in violation of his Constitutional rights.
Because it involves genuine issues of material fact, this claim
survives Defendants' motion for summary judgment.

Under the Eighth Amendment, which applies to states through the due process clause of the Fourteenth Amendment,[7] prison officials must "take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996); see also Farmer v. Brennan, 511 U.S. 825, 832, (1994). "Prison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" Lee v. Artuz, No. 96 Civ. 8604 (JGK), 2000 U.S. Dist. LEXIS 2022, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting Farmer, 511 U.S. at 834). Nevertheless, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into Constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). To establish liability, a

---

[7] Pretrial detainees are protected by the due process clause of the Fourteenth Amendment rather than by the Eighth Amendment's prohibition on cruel and unusual punishment, which applies only to convicted prisoners. See, e.g., Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). Because "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner," Weyant, 101 F. 3d at 856, courts apply the same "deliberate indifference" test developed under the Eighth Amendment to pretrial detainee's claims arising under the Fourteenth Amendment. See Houston v. County of Westchester Dep't of Corr., No. 06 Civ. 3395 (DC), 2006 U.S. Dist. LEXIS 89051, *11 (S.D.N.Y. Dec. 5, 2006).

10

plaintiff must show that, objectively, the conditions of his
incarceration posed a substantial risk of serious harm.  A
"sufficiently serious" deprivation entails a "denial of the
minimal civilized measure of life's necessities."  Farmer, 511
U.S. at 834 (citation and quotations omitted).  Subjectively, a
plaintiff must show that prison officials acted with deliberate
indifference to that risk.  See Id.  In the failure-to-protect
context, "a prison official acts with deliberate indifference
and thus 'has sufficient culpable intent if he has knowledge
that an inmate faces a substantial risk of serious harm and he
disregards that risk by failing to take reasonable measures to
abate the harm.'"  Lee, 2000 U.S. Dist. LEXIS 2022, at *5
(quoting Hayes, 84 F.3d at 620).

     Here, it is clear that Tatum's assault and injury amounts
to a sufficiently serious deprivation; the fracture of Tatum's
mandible demonstrates his subjection to a substantial risk of
serious harm and satisfies the objective prong of the inquiry.
See, e.g., Houston, 2006 U.S. Dist. LEXIS at *13 (noting that a
fracture "can be a serious medical condition"); Warren v. Goord,
579 F. Supp. 2d 488 (S.D.N.Y. 2008) (finding that three-inch cut
to plaintiff's cheek, requiring twelve stitches to close,
satisfied the objective requirement).

     With respect to the subjective element, Defendants argue
that, because the assaults were spontaneous, Officer Jackson was

unaware of any risk to Tatum's safety.  In view of Tatum's
version of the events leading to the first attack, however, a
reasonable juror could find that Officer Jackson was aware of an
imminent attack on Tatum, in addition to witnessing it.  That
being so, a reasonable juror could also find that Officer
Jackson's observation of the attack in Tatum's bed put her on
notice that Tatum faced a risk of further assault.  Whether or
not Officer Jackson ended the initial attack by issuing verbal
commands, it is clear that she failed to prevent or respond to
the bathroom assault.

Accordingly, a reasonable jury could find that Officer
Jackson disregarded substantial risk by failing to take
reasonable measures to abate the harm that Tatum ultimately
suffered.  The Court denies summary judgment on this claim.

### b. Deliberate Indifference to Medical Needs

Tatum contends that Captain Jackson deliberately delayed
medical attention "for the sole purpose of causing plaintiff to
suffer further pain" and in violation of the Constitution.
(Second Amended Complaint ("Compl."), ¶ 52.)  This claim fails
as a matter of law.

The due process clause of the Fourteenth Amendment protects
a pretrial detainee against a state actor's unreasonable

deprivation of medical needs.[8]   See Bryant v. Maffucci, 923 F.2d
979, 983 (2d Cir. 1991).  To establish an unconstitutional
denial of medical care, a detainee must prove that prison
officials acted with "deliberate indifference to [his] serious
medical needs."   Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.
2003) (quoting Estelle v. Gamble, 429 U.S. 97, 104, (1976)).
First, the alleged deprivation of care must be, objectively,
"sufficiently serious;" this element measures the severity of
the alleged deprivation.  Id.  Second, the plaintiff must "prove
that the charged official 'kn[ew] of and disregard[ed] an
excessive risk to inmate health or safety.'"   Johnson v. Wright,
412 F.3d 398, 403 (2d Cir. 2005) (quoting Farmer, 511 U.S. at
837).

The objective requirement contemplates "a condition of
urgency that may result in degeneration or extreme pain."
Chance v. Armstrong, 143 F.3d at 702 (quotations and citations
omitted).  Significantly, because Tatum complains about a
"temporary delay in the provision of otherwise adequate
treatment, it is appropriate to focus on the challenged delay or
interruption in treatment rather than the prisoner's *underlying
medical condition* alone in analyzing whether the alleged
deprivation is, in objective terms, sufficiently serious, to

---

[8] The Second Circuit analyzes pre-trial detainees' Fourteenth Amendment claims
of deliberate indifference to a serious medical condition under the Eighth
Amendment standard.  See Lara v. Bloomberg, No. 04 Civ. 8690 (KMW), 2007 U.S.
Dist. LEXIS 95635, at *6-7 (S.D.N.Y. Dec. 20, 2007).

13

support an Eighth Amendment claim." Smith, 316 F.3d at 185
(quotations and citation omitted). Tatum alleges that Captain
Rodriguez "deliberately delayed treatment for the very purpose
of causing pain" by waiting ten to twenty minutes before taking
him to the infirmary, where a doctor gave him antibiotics to
prevent infection, aspirin to manage pain, and an ice pack.
(Plaintiff's Rule 56.1 Statement, ¶ 43.; Defs.' R. 56.1 Stmt.,
¶¶37-38.)

Although a delay in providing necessary medical care may in
some cases constitute deliberate indifference, the Second
Circuit has reserved such a classification for cases in which,
for example, officials ignored a "life-threatening and fast-
degenerating" condition for three days, Liscio v. Warren, 901
F.2d 274, 277 (2d Cir. 1990), or delayed major surgery for over
two years, Hathaway v. Coughlin, 841 F.2d 48, 50-51 (2d Cir.
1988). See Demata v. New York State Corr. Dep't of Health
Servs., No. 99-0066, 198 F.3d 233 (table), 1999 WL 753142, at *2
(2d Cir. Sept. 17, 1999) (summary judgment for defendants where
plaintiff complained of knee injury in February 1994 and surgery
not performed until March 1997). No such circumstances are
present here.

To the contrary, "[a]s a matter of law, a wait this brief
cannot constitute deliberate indifference to an injury such as
Plaintiff's." Revenell v. Van Der Steeg, No. 05 Civ. 4042 (WHP)

14

2007 U.S. Dist. LEXIS 17868, at *12 (S.D.N.Y. Mar. 14, 2007)
(holding that fifteen to twenty minute delay in treatment of
fractured finger could not amount to deliberate indifference);
see also Cain v. Jackson, No. 05 Civ. 3904 (LAP), 2007 U.S.
Dist. LEXIS 55090 (S.D.N.Y. July 27, 2007) ("The pain and
discomfort that Plaintiff alleges as a result of the
[approximately four hour] delay in her receiving medical care
and prescription medications . . . is simply insufficient to
implicate the Eighth Amendment.")

      With regard to Tatum's alleged deprivation of medical care,
his claims do not suffice to implicate the Eighth Amendment.
Because the record cannot support a claim of deliberate
indifference against Captain Rodriguez, that claim is dismissed.

### c. Conspiracy, Excessive Force, Assault and Battery

      Tatum alleges that Inmates Martin and Chin agreed and
conspired, with Officer Jackson, to violate his Constitutional
rights "by assaulting him at the instigation of Correction
Officer Jackson, who was acting under color of state law."
(Compl. ¶¶ 57-59.)  Further, he claims that Officer Jackson "is
liable for assault and battery and excessive force," in
violation of his Constitutional rights, "because she aided and
abetted and conspired with" Inmates Martin and Chin "in their
physical assault on plaintiff."  (Compl. ¶ 51.)

### 1. Conspiracy

15

Conspiracy to deprive another of his Constitutional rights is actionable under Section 1983. See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). To state such a conspiracy claim, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Id; accord Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).

As Defendants note, "'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his Constitutional rights are properly dismissed.'" Ciambriello, 292 F.3d at 325 (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Tatum alleges more than that, however.

Tatum's deposition testimony indicates that, upon Tatum's arrival at ARDC on the morning at issue, he found Officer Jackson talking to a group of inmates, including Inmates Martin and Chin. After Inmate Martin told Officer Jackson that Tatum was "popping shit" to her, she became "irate" and charged at Tatum. She was held back, but Inmates Martin and Chin attacked Tatum as Officer Jackson stood by. At the conclusion of this assault, she was still "talking excitedly" and "agitated." Within moments, Inmates Martin and Chin followed Tatum into the

16

bathroom and attacked him again as Officer Jackson stood by.
(Tatum Dep., at 55-56, 59-65.)

Although Tatum has not offered any evidence regarding the
contents of the conversation between Officer Jackson and Inmates
Martin and Chin, the Court cannot preclude the possibility that
a reasonable jury could conclude, on the basis of Tatum's
account, that Officer Jackson and Inmates Martin and Chin
conspired to violate his Constitutional rights.  See, e.g.,
Cumberbatch v. Port Auth., No. 03 Civ. 749 (BSJ), 2006 U.S.
Dist. LEXIS 88853, at *34 (S.D.N.Y. Dec. 5, 2006) (finding
allegations that officers agreed to, and did, assault plaintiff
sufficient to defeat summary judgment on a Section 1983
conspiracy claim).  Because this claim must be addressed by a
jury, summary judgment is denied.

### 2. Excessive Force

"The core judicial inquiry" for claims of excessive force
is "whether force was applied in a good-faith effort to maintain
or restore discipline, or maliciously and sadistically to cause
harm."  Hudson v. McMillian, 503 U.S. 1, 7-8 (1992).  To
establish a Constitutional claim of excessive force, "two
conditions, one subjective and the other objective . . . must be
met."  United States v. Walsh, 194 F.3d 37, 49 (2d Cir. 1999)
(citing Hudson, 503 U.S. at 20).  The subjective condition is
satisfied if the defendant has a "sufficiently culpable state of

mind . . . shown by actions characterized by wantonness." Id.
In determining whether the use of force was wanton, a court
evaluates "the need for application of force, the relationship
between that need and the amount of force used, the threat
reasonably perceived by the responsible officials, and any
efforts made to temper the severity of a forceful response."
Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir. 1994) (citations and
quotations omitted).

The objective condition is satisfied if it is "shown that
the deprivation alleged is objectively sufficiently serious or
harmful enough." Walsh, 194 F.3d at 50 (citing Hudson, 503 U.S.
at 8). This condition is satisfied "even if the victim does not
suffer serious or significant injury provided that the amount of
force used is more than de minimis, or involves force that is
repugnant to the conscience of mankind." Id. (citations and
quotations omitted).

Defendants neither defend the alleged application of force
at issue nor challenge Tatum's ability to satisfy the objective
or subjective requirements. Rather, in moving for summary
judgment, they argue only that Officer Jackson did not
personally subject Tatum to any force whatsoever. This argument
is unavailing. For the purposes of this motion, the Court must
accept Tatum's version of the events at issue; "[t]hat
Defendants' version of the events is markedly different cannot

18

avail them at this stage in the litigation." Cumberbatch, 2006

U.S. Dist. LEXIS 88853, at *27 (citing Williams v. City of Mount

Vernon, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (denying

summary judgment of excessive force claim because "[t]he claim

has been adequately pled, and defendants cannot escape the

charges simply by alleging a different version of the

incident")). And, as explained above, the Court cannot preclude

the possibility that a reasonable jury could conclude, on the

basis of Tatum's account, that Officer Jackson aided and abetted

the use of force at issue. Consequently, this claim survives.

## d. Supervisory and Municipal Liability

Tatum claims that the City, Commissioner Horn and Warden

Curcio (collectively, "City Defendants") are liable, under

Section 1983, for their failure to instruct, supervise, control,

and discipline Officer Jackson and Captain Rodriguez. (Compl. ¶

62.) Tatum alleges that the City Defendants were deliberately

indifferent to Tatum's safety and welfare. On this claim, the

Court grants summary judgment.

### 1. The City

A municipality "may not be sued under § 1983 for an injury

inflicted solely by its employees or agents." Monell v.

Department of Soc. Servs., 436 U.S. 658, 694 (1978). Instead,

it may be held liable only when a constitutional deprivation is

inflicted pursuant to its policy or custom. See id.; DeCarlo

19

v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).  To set forth a
cognizable claim for municipal liability, a plaintiff must plead
and prove "(1) an official policy or custom that (2) causes the
plaintiff to be subjected to (3) a denial of a constitutional
right."  Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).
While a plaintiff need not "show that the municipality had an
explicitly stated rule or regulation, a single incident alleged
in a complaint, especially if it involved only actors below the
policy-making level, does not suffice to show a municipal
policy."  DeCarlo, 141 F.3d at 61 (internal citations omitted).

    Tatum has not made the required showing.  He argues that
the City's "policy of housing Tatum with up to 50 violent
criminals and an untrained correction officer was the moving
force causing his injuries."  (Pl.'s Mem. at 15.)  The evidence
he relies upon is Officer Jackson's testimony that, on April 29,
2005, she supervised 100 inmates.  While she testified that she
left 50 beds on the north side of Mod 2 unsupervised while
patrolling the south side (Jackson Dep., at 72), she also
testified that another officer worked with her – the "Mod 2-A
Officer."  (Jackson Dep., at 58.)  And when asked if any of Mod
2's inmates were "violent criminals," Officer Jackson testified,
"I'm sure there are.  I don't know everybody's history or what
they have been arrested for.  No, I don't know."  The next
question asked was whether her unit included "people with crimes

20

of violence," and she responded, "I'm sure there is, yes."
(Jackson Dep., at 74.)

    This testimony is insufficient to identify a municipal
policy.  In short, beyond the facts of his own singular
incident, he has not identified, cited, or presented evidence
suggesting the existence of any municipal policy.  See City of
Oklahoma v. Tuttle, 471 U.S. 808, 823-824 (1985) ("Proof of a
single incident of unconstitutional activity is not sufficient
to impose municipal liability under Monell.").  Moreover, Tatum
has not linked these facts to his alleged Constitutional injury.

    Similarly, Tatum has not demonstrated that the City "had
notice of but repeatedly failed to make any meaningful
investigation into charges that its agents were violating
citizens' constitutional rights."  DeCarlo, 141 F.3d at 61.  Nor
does the record contain any indication that his assault or
injury was foreseeable in light of the City's practices.
Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("A
city's failure to train its subordinates satisfies the policy or
custom requirement only where the need to act is so obvious, and
the inadequacy of current practices so likely to result in a
deprivation of federal rights, that the municipality or official
can be found deliberately indifferent to the need.").

    In sum, the absence of evidentiary support for Tatum's
claim of municipal liability dictates its dismissal.

## 2. **Commissioner Horn and Warden Curcio**

In a Section 1983 suit, supervisory liability cannot be premised solely on a theory of *respondeat superior*. See Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Rather, a plaintiff must show that the supervisor was personally involved in a Constitutional violation by either: (1) directly participating in the violation; (2) failing to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom and policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failing to act on information indicating that unconstitutional acts are occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Tatum seems to contend that Commissioner Horn and Warden Curcio are liable pursuant to the third of these categories.[9]  In support of this claim, Tatum argues that Officer Jackson "received virtually no training about preventing violence." (Pl.'s Mem. at 11).  Tatum grounds this argument on Officer

---

[9] With regard to the first category, in an effort to prove personal involvement, Tatum cites Warden Curcio's signature on the Injury to Inmate Report and concurrence with its findings (Pl.'s Mem. at 12; Margulis-Ohnuma Aff., Ex. D).  Warden Curcio's contribution to the report does not establish his involvement in the events leading up to the injury itself.  This report comprises the only factual reference to Commissioner Horn or Warden Curcio in the entire record.  Tatum presents no evidence relating to the second, fourth or fifth categories of liability; the record contains no indication that Commissioner Horn or Warden Curcio had knowledge of any prior or ongoing wrongs, or that they were grossly negligent in supervising the defendants alleged to have committed unconstitutional acts.

Jackson's deposition testimony and Defendants' failure, in
response to his requests, to produce documentation demonstrating
that Officer Jackson received any training.[10]

Officer Jackson testified that a fight between two or three
inmates would not warrant the use of a mace-like chemical spray
or the activation of her personal body alarm.  By contrast, she
said that it would be proper to use her chemical spray, and that
she would activate her personal body alarm, in situations
involving weapons or larger-scale brawls or riots.  (Jackson
Dep., at 43-45, 119).  Tatum highlights additional testimony
according to which Officer Jackson was unaware of the meaning of
the term "non-lethal force," she supervised 100 men, some of
whom may have been violent criminals, and she frequently left
the men in her charge alone for one-and-a-half to two-hour
intervals (Pl.'s Mem. at 11;  Jackson Dep., at 33, 72, 74).

In that light, Tatum speculates that "a jury could infer
that the[se] policies were established by Messrs. Horn and
Curcio."  (Pl.'s Mem. at 11.)  Problematically, however, this
speculation lacks evidentiary support.  In addition to his
aforementioned failure to identify, cite or present evidence
suggesting the existence of any municipal policy, Tatum has not
connected or attributed these alleged policies to Commissioner

---

[10] Officer Jackson testified that, in addition to her training in police
academy, she attended "block training," consisting of four days at the
academy, once a year.  (Jackson Dep., at 33-34.)

Horn or Warden Curcio.  See, e.g., Pettus v. Horn, No. 04 Civ.
459 (WHP), 2005 U.S. Dist. LEXIS 20591, at *13-14 (S.D.N.Y.
Sept. 21, 2005) (dismissing inmate's failure to supervise claim
where unsupported by any evidence that DOC supervisors
sanctioned the alleged policy).

"The bare fact that [Commissioner Horn and Warden Curcio]
occup[y] a high position in the New York prison hierarchy is
insufficient to sustain [Tatum's] claim." Colon, 58 F.3d at
874.  Because Tatum has not provided evidence from which a
reasonable jury could find that Commissioner Horn or Warden
Curcio were personally involved in his assault, Tatum's Section
1983 claims against these defendants are dismissed.

## III. State Law Claims

### a. Negligent Hiring

Tatum alleges that the City Defendants failed to exercise
due care in hiring Officer Jackson, and that his injuries
directly resulted from this failure.  (Compl. ¶¶ 69-71.)  This
claim fails as a matter of law.

Under New York law, a cause of action for negligent hiring
"requires allegations that the employer knew or should have
known of the employee's propensity to commit injury, or the
employer failed to investigate a prospective employee
notwithstanding knowledge of facts that would lead a reasonably
prudent person to investigate that prospective employee."

Richardson v. City of New York, No. 04 Civ. 5314 (THK), 2006
U.S. Dist. LEXIS 92731, at *45-46 (S.D.N.Y. Dec. 21,
2006)(citations and quotations omitted).  Here, Tatum has not
made, let alone substantiated, any such allegations.  As a
result, this claim is dismissed.[11]

### b. Assault and Battery

#### 1. Officer Jackson – Aiding and Abetting

Tatum alleges that Officer Jackson and Inmates Martin,
Chin, and possibly others assaulted and battered him, and that
Officer Jackson aided and abetted that assault.  Defendants
argue that, because Officer Jackson "had no bodily contact with
plaintiff," this claim must be dismissed.  In so doing, however,
they ignore Tatum's assertion that Officer Jackson *aided and
abetted* the assault.  As defendants acknowledge, "the test for
whether a plaintiff can maintain a supplemental cause of action
for assault and battery is the exact same test as the one used
to analyze a Fourth Amendment excessive force claim."  See
Pierre-Antoine v. City of New York, No. 04 Civ. 6987 (GEL) 2006
U.S. Dist. LEXIS 28963, at *25 (S.D.N.Y. May 9, 2006).  It
follows that, because the Court denies summary judgment as to

---

[11] In support of their motion, Defendants argue only that this claim fails
because, at all times relevant to this action, Officer Jackson acted within
the scope of her employment.  See, e.g., Gurevich v. City of New York, No. 06
Civ. 1646 (GEL), 2008 U.S. Dist. LEXIS 1800, at *20  (S.D.N.Y. Jan. 10, 2008)
(noting that a "claim for negligent hiring or supervision can only proceed
against an employer for an employee acting outside the scope of her
employment").  Because the Court dismisses this claim on other grounds, it
need not address Defendants' contention.

Tatum's excessive force claim against Officer Jackson, his
assault and battery claim survives as well.

## 2. City - *Respondeat Superior*

Further, Tatum asserts that the City is liable for Officer
Jackson's assault and battery under the doctrine of *respondeat
superior*.  Although Defendants move to dismiss all of Tatum's
claims, their submissions in support of summary judgment do not
address or discuss this particular claim.  In the absence of any
stated basis for dismissal, the Court will not dismiss this
claim *sua sponte*.

### c. Negligence

Tatum alleges that Officer Jackson breached her duty to
protect him from assault and that the City Defendants are liable
for Officer Jackson's negligence.  "Various federal courts
within this circuit have held, however, that under New York
State law, when a plaintiff brings excessive force and assault
claims which are premised upon a defendant's allegedly
intentional conduct, a negligence claim with respect to the same
conduct will not lie."  Clayton v. City of Poughkeepsie, No. 06
Civ. 4881 (SCR), 2007 U.S. Dist. LEXIS 55082, at *18-19
(S.D.N.Y. June 21, 2007) (citations and quotations omitted).
"Because Plaintiff here has asserted claims of excessive force
and assault and battery and pled sufficient facts to support
those claims, he cannot additionally argue that the same facts

26

would give rise to a claim for either negligence or gross
negligence." Id. at *19. Accordingly, this claim is dismissed.

## IV. Defendants' Immunity from Suit

Defendants contend that Officer Jackson is entitled to
qualified immunity as to Tatum's federal claims and to good
faith immunity as to his state law claims,[12] and that the City is
entitled to governmental immunity from suit. The Court
disagrees: genuine issues of material fact preclude any
determination of immunity.

### a. Qualified Immunity

The doctrine of qualified immunity shields government
officials performing discretionary functions from liability for
civil damages insofar as their conduct does not violate clearly
established statutory or Constitutional rights of which a
reasonable person would have known. See Wilson v. Layne, 526
U.S. 603, 609 (1999); Anderson v. Recore, 446 F.3d 324, 333 (2d
Cir. 2006). "A right is clearly established if (1) the law is
defined with reasonable clarity, (2) the Supreme Court or the
Second Circuit has recognized the right, and (3) a reasonable
defendant would have understood from the existing law that his
conduct was unlawful." Jean-Laurent v. Wilkinson, et al., 540
F. Supp. 2d 501, 514 (S.D.N.Y. 2008) (citations omitted).

---

[12] Because the Court has granted summary judgment to all claims against
Captain Rodriguez, Commissioner Horn and Warden Curcio, it need not address
Defendants' arguments in support of those defendants' immunity.

Summary judgment may be granted on this ground if the defendant sufficiently shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it.  See Ayers v. Ryan, 152 F.3d 77, 82 (2d Cir. 1998).

Because qualified immunity is an affirmative defense, Defendants "bear the burden of showing that the challenged acts were objectively reasonable in light of the law existing at that time."  Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997) (citation omitted).  Here, because Tatum's federal claims against Officer Jackson – failure to protect and use of excessive force – involve clearly established Constitutional rights, Defendants must show that it was "objectively reasonable" for Officer Jackson to believe that her conduct did not violate those rights.  Defendants cannot do so.

Dismissal on the basis of a qualified immunity defense is inappropriate where there are facts in dispute that are material to a determination of reasonableness. See Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999).  As set forth above, material issues of fact exist as to Tatum's federal claims against Officer Jackson, and a determination of reasonableness inheres to each of these claims.  The Court cannot decide as a matter of law that she reasonably believed that her actions were lawful without a determination as to the underlying facts.  As a

28

result, qualified immunity is inappropriate here.  See Jean-
Laurent, 540 F. Supp. 2d at 515 (rejecting qualified immunity
because of the existence of material issues of fact).

### b. Good Faith and Governmental Immunity

New York State's doctrine of good faith immunity provides
that a government employee is immune from suit "for those
government actions requiring expert judgment or the exercise of
discretion . . . when the action involves the conscious exercise
of a judicial or quasi-judicial nature." Arteaga v. State, 72
N.Y.2d 212, 58-59 (1988).  With respect to police officers, it
has been held that the good faith immunity defense is a
qualified immunity, to which Officer Jackson would not be
entitled if she acted "unreasonably or in bad faith." Davis v.
City of New York, 373 F. Supp. 2d 322, 339 (S.D.N.Y. 2005).
Similarly, "governmental immunity does not attach to every
action of an official having discretionary duties but only to
those involving an exercise of that discretion." Mon v. City of
New York, 78 N.Y.2d 309, 313 (1991).

Because there are disputed issues of fact regarding Tatum's
assault and battery claims and the reasonableness of Officer
Jackson's related actions, the Court cannot find as a matter of
law that Defendants are entitled to good faith or governmental
immunities against those claims.  See Bradley v. City of New
York, No. 04 Civ. 8411 (RWS), 2007 U.S. Dist. LEXIS 7811, at

*34-35 (S.D.N.Y. Jan. 25, 2007) (finding summary judgment inappropriate, with regard to good faith and governmental immunities, because of the existence of disputed facts); Blake v. City of New York, No. 05 Civ. 6652 (BSJ), 2007 U.S. Dist. LEXIS 49160 (S.D.N.Y. July 3, 2007) ("For the same reasons discussed *supra* with respect to qualified immunity, genuine issues of material fact preclude good faith or governmental immunity.").  In this respect, Defendants' motion for summary judgment is denied.

## V.   Defendant Inmates

Tatum filed this action on June 7, 2006.  Despite Tatum's representation by counsel and the completion of discovery in this action, defendants John Doe Inmates 1 through 8 have not been served or identified.  Accordingly, because a "tort victim who cannot identify the tortfeasor cannot bring suit," Valentin v. Dinkins, 121 F.3d 72, 75 (2d Cir. 1996), this action is dismissed as to all John Doe Inmates.  See Hill v. Nieves, No. 06 Civ. 8213 (DLC), 2008 U.S. Dist. LEXIS 25911, at *13 (S.D.N.Y. Mar. 31, 2008).

Defendant Inmate Chin has not been served.  Unless Tatum shows good cause for this failure and effects service upon Inmate Chin by February 16, 2009, the Court will dismiss Tatum's claims against Inmate Chin.  See Zapata v. City of New York, 502 F.3d 192, 197-99 (2d Cir. 2007).

30

Defendant Inmate Martin has not moved for summary judgment;
Tatum's claims against him remain.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants'
motion for summary judgment as to all claims against Captain
Rodriguez, Commissioner Horn, and Warden Curcio; Tatum's federal
claim for municipal liability, against the City; his negligent
hiring claim against the City; and his negligence claims against
Officer Jackson and the City.  The Court DENIES Defendants'
summary judgment as to Tatum's failure to protect, conspiracy,
excessive force and assault and battery claims against Officer
Jackson; and his state law claim that the City is liable for
Officer Jackson's conduct.

In addition to these claims, Tatum's claims against Inmates
Martin and Chin – for conspiracy, excessive force and assault
and battery – remain.  Tatum's remaining claims against John Doe
Inmates are dismissed.

SO ORDERED:

BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:      New York, New York
            January 19, 2009