USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #. ____
DATE FILED: 6/19/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVIE B. TATUM,

Plaintiff,

- against -

THE CITY OF NEW YORK, CORRECTION
OFFICER RENEE JACKSON, individually and
in her official capacity, and TERREEM
MARTIN,

Defendants.

**ORDER**

No. 06-cv-4290 (PGG)(GWG)

PAUL G. GARDEPHE, U.S.D.J.:

This Order sets forth the Court's preliminary rulings concerning the in

limine motions filed by Plaintiff and Defendants Jackson and City of New York (the

"Defendants"). The rulings are made to assist the parties in preparing for trial and are

subject to reconsideration based on the proof as developed at trial.

**I.     PLAINTIFF'S MOTIONS**

Plaintiff has moved: (1) to exclude any evidence concerning his 2001

misdemeanor conviction for criminal possession of a controlled substance and his

subsequent violation of probation, and of any other convictions; and (2) to bar

Defendants from offering into evidence, for the truth of the matter asserted, the "Incident

Report Form" allegedly created by Correction Officer William Buford on April 29, 2005

(listed as Defense Exhibit C). (Pltf. Br. at 5-8)[1] Defendants do not oppose the motions,

although they reserve the right to cross-examine Plaintiff concerning his criminal history

---

[1] The Court cites the June 8, 2009 Affirmation of Zachary Margulis-Ohnuma as "Pltf.
Br." and the June 15, 2009 Affirmation of Zachary Margulis-Ohnuma as "Pltf. Opp. Br."

if Plaintiff introduces the subject.  (Def. Opp. Br. at 2-3)  Accordingly, Plaintiffs'

motions are granted subject to Defendants' reservation concerning Plaintiff's criminal

history.

## II.    DEFENDANTS' MOTIONS

### A.    Unopposed Motions

Plaintiff has not opposed Defendants' motions to preclude Plaintiff from:

(1) calling Deva Sims-Sneed as a witness; (2) "referring to, introducing, or inquiring

about allegations of inmate violence at Rikers Island, including any references to 'The

Program,' 'team,' or 'enforcer'"; and (3) offering the deposition testimony of available

witnesses as part of Plaintiff's case in chief.  (Def. Br. at 22-23, 29-31, 35; Pltf. Br. at 1-2

& 25 n.6)  Accordingly, Defendants' motion is granted with respect to these issues.

### B.    Excluding Plaintiff's Expert Testimony

Plaintiff intends to call Dr. Richard Sullivan, an emergency room doctor,

to testify as to his opinion "that the injury that Mr. Tatum suffered at Rikers Island on

April 29, 2005 caused Mr. Tatum pain over several years," and, more specifically, that

"the incident caused the following: (1) the emergent medical need for surgery and other

treatment both at Rikers and at NYU Downtown Hospital from April 29, 2005 until May

2, 2005; (2) the need for surgery and other treatment at Westchester Medical Center from

September 11, 2006 until September 19, 2006; (3) recurring moderate and severe pain

from the time of the injury until the present; (4) limitations in the movement of Mr.

Tatum's jaw and temporomandibular joints; and (5) loose teeth."  (Def. Opp. Ex. A; Pltf.

Br. at 12)  Defendants object to Dr. Sullivan's testimony on numerous grounds:  (1) his

expert report, dated September 28, 2007 did not comply with Fed. R. Civ. P. 26(a)(2) in

that "it did not contain a complete statement of all opinions to be expressed and the basis

thereof," and did not contain the requisite information about his prior publications,

testimony and compensation; (2) he does not meet Rule 702's requirements because he is

not an oral surgeon; his opinion will not assist the jury in understanding the evidence or

determining a relevant fact issue; and his opinion does not have a reliable basis; and (3)

his testimony should be excluded under Rule 403 because it will merely be cumulative of

Plaintiff's testimony concerning his injuries.  (Def. Br. at 7-21; Def. Opp. Br. at 2-7)

   The Court finds that Plaintiff failed to meet Rule 26(a)(2)'s disclosure

requirements in several respects.  The only written report by Dr. Sullivan is Dr.

Sullivan's four-paragraph September 28, 2007 letter to Plaintiff's counsel (the "Report"),

which was disclosed by Plaintiff within the period for expert discovery.  (Def. Ex. C)  On

its face, the Report and attached curriculum vitae of Dr. Sullivan do not disclose the

required information concerning his prior publications, testimony and compensation.

Further, the opinion disclosed in the Report is much narrower than the opinion that

Plaintiff states Dr. Sullivan will offer at trial.  In the Report, Dr. Sullivan opines only

that:

> Although one cannot describe the pain that Mr. Tatum has
> experienced as being life-altering, the pain he experienced
> would have been nearly constant. . . . [Eating] required
> careful planning and could have engendered significant
> pain.  Before the fractures were repaired and while the teeth
> were wired, the pain would have been very severe,
> requiring liberal use of narcotic painkillers over two
> periods of many weeks.

(Def. Ex. C)  He does not otherwise offer any opinion concerning the extent or cause of

Plaintiff's ongoing medical problems.

Rule 37(c)(1) provides that a party that does not disclose information as required by Rule 26(a) may not offer the information as evidence unless its "failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  However, exclusion is not mandatory under Rule 37, even if the failure was not substantially justified or harmless.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006).  Instead, it deciding whether exclusion is appropriate, the Court must consider: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (internal quotation and emendations omitted).

Here, the above factors weigh in favor of allowing Dr. Sullivan to testify as to the opinion stated in the Report.  Contrary to Defendants' argument, disclosure of the opinion and the basis for the opinion was adequate.  While the opinion is briefly stated, its brevity does not render it inadequate, as it does not concern a complex medical issue.  Cf. Sita v. Danek Med., Inc., 43 F. Supp. 2d 245, 253-55 (E.D.N.Y. 1999) (considering Rule 702 objection to one-paragraph expert report and refusing to preclude offer of opinion that broken screw in plaintiff's spine was a cause of pain in plaintiff's spine, noting that the opinion did not concern a complex medical issue).  Further, Dr. Sullivan identified the basis for his opinion – i.e., his review of Plaintiff's medical records and an interview with Plaintiff.  (Def. Ex. C)  To the extent Defendants felt this disclosure was inadequate, they could have sought to take Dr. Sullivan's deposition at any time during the past year and a half, but did not do so.

4

Thus, the only information that Plaintiff failed to disclose in the September 2007 Report concerns Dr. Sullivan's compensation, publications and previous testimony.  Plaintiff has remedied these failures (Pltf. Off. Br. at 10-11) and Defendants have not articulated any specific prejudice they will suffer as a result of the late disclosure.  Moreover, Plaintiff has been ordered to make Dr. Sullivan available for deposition before trial.  (Docket No. 75)  Thus, Plaintiff's incomplete disclosure is no reason to bar Dr. Sullivan from testifying as to the opinion he offered in September 2007.

As to Defendants' Rule 702 objection (Def. Br. at 16-17) – that Dr. Sullivan is not qualified to give a medical opinion in this case because he is not an oral surgeon – the Court finds no reason to hold that Dr. Sullivan's opinion is not reliable or that – as an experienced emergency room physician – he is unqualified to testify concerning the severity of pain likely to be caused by a fractured jaw.  As to Defendants' Rule 403 objection (id. at 18-19), Dr. Sullivan's testimony is not merely cumulative of Plaintiff's testimony on this issue.  Dr. Sullivan's testimony will assist the jury in understanding the nature of Plaintiff's injury and related medical records from 2005, and will also tend to rebut any claim by Defendants that Plaintiff is exaggerating the pain and discomfort he suffered.  Moreover, Defendants have offered no case law support for the proposition that expert testimony concerning the severity of pain caused by an injury is inappropriate, and there is precedent supporting the admissibility of such evidence.  See Miles v. County of Broome, No. 04-Civ.-1147, 2006 WL 561247, at *4 n.3 (N.D.N.Y. Mar. 6, 2006) (stating that expert testimony concerning amount of pain caused by injury was relevant to prisoner's civil rights claim); Beckom v. U.S., 584 F. Supp. 1471, 1484 (D.C.N.Y. 1984) (noting with respect to damages that medical expert testified that

deceased's "medical condition and therapy were such as to be quite painful"); see also 31A Am. Jur. 2d Expert and Opinion Evidence § 239 (2009) ("The existence, nonexistence, or severity of pain, is, as a general rule, a proper subject of expert testimony.").

        To the extent, however, that Plaintiff's counsel seeks to have Dr. Sullivan testify as to the opinions listed as items (1), (2), (4) and (5) in counsel's June 10, 2009 letter – i.e., that the April 2005 injury subsequently required various types of treatment and caused Plaintiff's current medical problems (Def. Opp. Ex. A) – Defendants' motion is granted.  With respect to these previously undisclosed opinions, all of the factors the Court must consider weigh in Defendants' favor.

        As to the first factor, Plaintiff's only disclosure of these opinions, and the bases for the opinions, is in a letter signed by his counsel on June 10, 2009, less than two weeks before the start of trial.  (Def. Opp. Ex. A; Pltf. Opp. Br. at 12)  Plaintiff has offered no explanation for his complete failure to comply with Rule 26(a)(2)'s disclosure requirement as to the substance of and bases for these opinions.

        As to the second factor, although evidence concerning Plaintiff's current medical condition and the alleged long-term consequences of Plaintiff's injury is important to Plaintiff's damages case, it can be introduced through Plaintiff and (if allowed) his medical records.  Cf. Miles, 2006 WL 561247, at *4 n.3 (concluding that the importance of expert medical testimony to plaintiff's case was undermined by the fact that the plaintiff could "establish . . . any pain suffered" through his own testimony and medical records).

With respect to the third factor, Defendants would be prejudiced if Plaintiff were allowed to offer expert testimony on subjects he did not disclose until less than two weeks prior to trial.  Because Plaintiff failed to disclose in a timely manner both his recent medical records and his expert's opinion concerning the ongoing effects of Plaintiff's injury, Defendants have had no opportunity to prepare their own expert to testify on these subjects (and had no reason to believe they would need an expert to testify concerning these subjects).

With respect to the fourth factor, although Plaintiff has now stated that he would consent to a continuance (Pltf. Opp. Br. at 18 n.4), a continuance here is not practical given the parties' earlier insistence on proceeding to trial and the fact that Defendant Martin has already been transferred to this District so that he can be present for trial starting on June 22.

Finally, Plaintiff has not shown that Dr. Sullivan – as an emergency room doctor who may have experience in initially diagnosing, stabilizing, and providing pain medication for the type of injuries Plaintiff suffered, but who apparently does not otherwise treat such injuries (Def. Opp. Br. at 6; Def. Opp. Ex. B at 55-56, 61) – is qualified to testify as an expert concerning the long-term effects of Plaintiff's April 29, 2005 injury and the cause(s) of his current medical problems.

Therefore, Dr. Sullivan may testify only as to: (1) the nature of the injury Plaintiff suffered on April 29, 2005, based on Plaintiff's April and May 2005 medical records, and (2) the opinion set forth in the September 2007 Report.

### C.   <u>Plaintiff's Medical Records</u>

Defendants seek to exclude Plaintiff's proposed Exhibits 1-9 (Def. Br. at 23-25), which are described in the joint pre-trial order as various medical records from 2005-2009.  Defendants did not object to Exhibits 1-5 in the pre-trial order (Docket No. 61 at 11), these records all apparently relate to the 2005-2006 time period (<u>id.</u>), and the Court finds no reason to preclude Plaintiff from offering them.  The Court also finds no reason to preclude Plaintiff from offering proposed Exhibit 8 – records concerning an x-ray examination conducted immediately after the April 29, 2005 incident.  (<u>Id.</u>)  Although Exhibit 8 was not timely disclosed, it has now been produced to Defendants, who have not articulated any unfair prejudice they will suffer if Plaintiff is allowed to introduce it at trial.  Defendants' primary objection to Exhibits 1-5 and 8 appears to be that they will be cumulative and that sections of the records are not relevant.  (Def. Br. at 23-24)  The Court will reserve decision on any such objection until the exhibits are offered at trial.

Defendants also seek to exclude Exhibits 6, 7, and 9, which relate to the 2008-2009 time period, because they were not timely produced.  (Def. Br. at 24)  However, Defendants have not articulated with any specificity the prejudice they will suffer if Plaintiff is allowed to offer these exhibits at trial.  Moreover, at least some of the records were apparently produced months before trial in accordance with Plaintiff's duty to supplement.  (Pltf. Opp. Br. at 25)  The Court will reserve decision on whether Exhibits 6, 7 and 9 will be excluded until after hearing further argument from the parties.

### D.   <u>The "Inmate Voluntary Statements"</u>

Defendants seek to exclude two documents that Plaintiff belatedly added to his exhibit list: (1) an "Inmate Voluntary Statement" that Plaintiff claims he wrote and

kept a copy of, and (2) an "Inmate Voluntary Statement" produced by the City, and purportedly signed by Plaintiff, which Plaintiff claims is a forgery.  (Def. Br. at 3-6) Defendants argue that the documents are not relevant and are hearsay.  (Id.)  Plaintiff argues that these documents are relevant because they provide a basis for the jury to find that Officer Jackson's role in the April 29, 2005 incident was covered up, and if the jury could find a cover-up, it could also reasonably infer that Plaintiff, and not Jackson, is telling the truth about Jackson's role.  (Pltf. Opp. Br. at 5-6)

Plaintiff, however, has not offered any evidentiary support for his contention that Jackson was involved in the alleged cover-up.  Without such evidence, there is no rational basis for a jury to infer a consciousness of guilt on Jackson's part, and thus to infer from the alleged cover-up that Jackson acted improperly.  Stated another way, absent proof that Jackson was involved with and had knowledge of the alleged cover-up, it is irrelevant that other officers might have engaged in such activities to protect her and/or the City from liability.  Because it is not clear at this point whether Plaintiff can establish such an evidentiary foundation, this Court will reserve decision concerning the admissibility of the two "Inmate Voluntary Statements."  Plaintiff will be permitted to attempt to elicit the necessary foundational testimony at trial.  Until such an evidentiary showing is made, no reference to these statements is to be made before the jury.[2]

_____

[2] Defendants' authenticity objection to the statement that Plaintiff claims he wrote (Def. Br. at 3) is without merit.  A document may be authenticated with "[t]estimony that a matter is what it is claimed to be" by a witness with knowledge, F.R.E. 901(b)(1), i.e., by Plaintiff.  "Rule 901 does not erect a particularly high hurdle," and is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity."  United States v. Tin Yat Chin, 371 F.3d 31, 37 (2d Cir. 2004); see Bazak

### E.      Testimony of Captain Rodriguez and Deputy Warden Colon

Defendants argue that Captain Rodriguez should not be called as a witness because his testimony would not be relevant to the remaining claims, in that "he has no direct knowledge of the actual incident, . . . was not present at any time either before or during the alleged incident, and . . . will not assist the trier of fact in this case." (Def. Br. at 21-22) Captain Rodriguez was, however, personally involved in some of the events of April 29, 2005, and was Officer Jackson's supervisor that evening. His signature also appears on several documents relating to the incident at issue here. Accordingly, the Court will not preclude Plaintiff from calling Captain Rodriguez as a witness, and will decide any other questions that arise concerning his testimony based on Defendants' objections at trial.

Defendants similarly argue that Deputy Warden Colon should not be called to testify because he has no knowledge of relevant facts and, to the extent the

---

Int'l Corp. v. Tarrant Apparel Group, 378 F. Supp. 2d 377, 391-92 (S.D.N.Y. 2005) (once proponent has offered "sufficient proof . . . that a reasonable juror could find in favor of authenticity . . . the evidence may be admitted and any outstanding issues regarding its authenticity are to be resolved by the fact-finder"). Insofar as Plaintiff's alleged motive to falsify the document suggests that it is unreliable, that goes only "to the weight of the evidence, not to its admissibility." Chin, 371 F.3d at 37.

  Defendants' hearsay objection is also without merit, because Plaintiff will not be allowed to offer either statement for the truth of the matter asserted – i.e., to establish what actually happened during the alleged assault on April 29, 2005. Rather, if Plaintiff succeeds in establishing an adequate evidentiary foundation for these statements – as discussed above – they will be admitted solely for the purpose of showing that Jackson took steps to conceal what happened and her role in the assault.

  Finally, because Plaintiff will not be permitted to offer either statement unless he elicits evidence from which a jury could conclude that Jackson had knowledge of and was involved in the alleged "cover up," there is no possibility of unfair prejudice to her (see Def. Br. at 5-6).

10

Court finds testimony about Defendants' failure to produce infraction records for the inmates who allegedly assaulted Plaintiff to be relevant, Colon has offered an affidavit on the subject.  (Def. Br. at 22-23)  Plaintiff argues that because Defendants do not object to the Court receiving Colon's affidavit in evidence, there is no basis for them to  object to his live testimony.  (Pltf. Opp. Br. at 24-25)  At this point, however, Plaintiff has offered no basis for this Court to find Colon's testimony relevant because – as with the "Inmate Voluntary Statements" – he has cited no evidence connecting Jackson to the purported cover-up.  Therefore, the Court will reserve decision on Defendants' motion until the point in the trial when Plaintiff proposes to call Colon to testify, at which time the Court will assess the evidentiary foundation for his testimony.[3]

> **F.      DOC Directives**

Defendants seek to preclude Plaintiff from offering two DOC Directives (Def. Br. at 27-29) which Plaintiff argues show why correction officers might be motivated to cover up incidents involving inmate violence (Pltf. Opp. Br. at 26-27).  The relevance of these documents turns on whether Plaintiff can connect Jackson to the alleged cover-up.  (See supra pp. 8-9)  Therefore, the Court will reserve decision on this issue.

> **G.      Reference to the City's Alleged Failure to Investigate**

The Defendants seek to preclude Plaintiff from referring at trial to the City's failure to investigate: (1) Jackson's claim – at her July 2007 deposition – that her signature on Plaintiff's Notice of Infraction was forged, and (2) the loss of Martin's and

---

[3] If Colon's testimony is admissible, the Court will not limit Plaintiff to offering his affidavit, which is not clear.  (See Def. Ex. E (Colon Aff.) ¶ 3)

Chin's disciplinary records.  (Def. Br. at 32)  Plaintiff argues that these failures are relevant (1) to show that "Jackson's conduct was in furtherance of her duties and within the scope of her authority," and (2) because the fact that certain documents are missing can give rise to an inference that they contained information that would be damaging to the Defendants.  (Pltf. Opp. Br. at 28)

There are a number of difficulties with Plaintiff's argument, however. First, the City does not dispute that Jackson was acting within the scope of her employment.  (Def. Br. at 35)  Accordingly, the proposed evidence is not relevant to a disputed issue in this case.  More importantly, the City's alleged failure to investigate the alleged discrepancies may shed light on the City's alleged desire to cover up the facts here, but such a desire is not relevant as to Officer Jackson until – as discussed above – it is shown that she had knowledge of and was involved in the cover-up.  Therefore, Defendants' motion to preclude any reference to the City's failure to investigate these irregularities is granted, subject to reconsideration if Plaintiff can tie Officer Jackson to the alleged cover-up.

### H.    Martin's and Chin's "Injury to Inmate" Reports

Defendant has moved to exclude the "Injury to Inmate" reports for Martin and Chin, arguing that they are not relevant and contain confidential medical information. (Def. Br. at 26)  Plaintiff argues that the reports are relevant to establish that Martin and Chin were not injured during the alleged assault.  (Pltf. Opp. Br. at 26)  If the fact that Martin and Chin were not injured is disputed at trial, and Plaintiff can explain how that fact is relevant to his claims, he will be permitted to offer the "Injury to Inmate" reports, provided that all confidential medical information is redacted.

I.       **References to the City and Its Liability**

Defendants seek to preclude any references to: (1) the fact that the City is a defendant in this action; and (2) the fact that the City may indemnify Jackson.  (Def. Br. at 34-36)

As to the first issue, Defendants cite no precedent for concealing the fact that the City is a defendant, and the Court will not do so.  Defendants' motion on that issue is denied.

As to the second issue, Plaintiff does not oppose Defendants' motion, but reserves the right to offer evidence that the City may indemnify Jackson if Jackson chooses to offer evidence concerning her financial resources.  (Pltf. Opp. Br. at 28-29)  Defendants' motion on this issue is granted subject to Plaintiff's reservation.  See, e.g., Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997) (holding that "a fact-finder can properly consider the existence of . . . an [indemnity] agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded" (emphasis in original)); Dallas v. Goldberg, No. 95-Civ.-9076(LTS), 2002 WL 1013291, at *5 (S.D.N.Y. May 20, 2002) (holding in case against New York City police officers that "if Defendants proffer evidence of their financial resources, Plaintiff will be permitted to offer evidence of the State's indemnification statute and its recent application").

J.       **Suggestion of a Specific Amount for a Damages Award**

The City has moved to preclude Plaintiff's counsel from suggesting that Plaintiff should be awarded a specific amount of damages.  (Def. Br. at 36-37)  The Second Circuit "disfavor[s]" allowing counsel to suggest that the jury award a specific

dollar amount for pain and suffering.  Consorti v. Armstrong World Indus., Inc., 72 F.3d

1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996).  However,

there is no "per se rule prohibiting counsel from suggesting a specific sum as damages,"

and the Second Circuit has left the issue "to the discretion of the trial judge, who may

either prohibit counsel from mentioning specific figures or impose reasonable limitations,

including cautionary jury instructions."  Lightfoot v. Union Carbide Corp., 110 F.3d 898,

912 (2d Cir. 1997).  Plaintiff's counsel will not be permitted to suggest a specific damage

award in his opening statement.  However, the Court will reserve decision on whether

such a suggestion will be permitted during summation.

>        **K.**       **Photographs, Video Clips and Diagrams**

The Court will reserve decision on the issue of Plaintiff's use of

photographs, video clips and diagrams, as it has not been given an opportunity to review

the proposed exhibits and Defendants have not made specific objections to their use.

>        **L.**       **City Defendants' Motion to Dismiss Assault and Battery Claims**

By letter dated June 17, 2009, the Defendants moved to dismiss Plaintiff's

assault and battery claims on the ground that he did not meet the pleading requirements

of New York General Municipal Law ("GML") § 50-i(1)(b), which provides that a

plaintiff must plead in his complaint that thirty days have elapsed since he filed the

Notice of Claim required by GML § 50-e and that the City either has not responded or

refused to pay the claim.  See McKinney's New York General Municipal Law § 50-

i(1)(b).  It is clear that Plaintiff failed to make the required allegations in his initial

Complaint (Docket No. 1), his Amended Complaint (Docket No. 12), or his Second

Amended Complaint (Docket No. 29).  However, while failure to meet GML § 50-

i(1)(b)'s pleading requirements ordinarily requires dismissal of state law claims, New York state courts have recognized that dismissal is not required in circumstances "constituting waiver . . . of the affirmative defense." Hyde v. Caputo, No. 98-Civ.-6722(FB), 2001 WL 521699, at *4 (E.D.N.Y. May 11, 2001).

Here, the Defendants did not argue that Plaintiff's pleading was deficient until three business days before trial. During the previous three years of litigation, they did not move to dismiss any of Plaintiff's three complaints, nor did they raise the pleading deficiency in their exhaustive summary judgment motion. (See Docket Nos. 33 (Notice of Motion) & 36 (Memorandum of Law)). Moreover, it is undisputed that Plaintiff complied with the actual notice requirement of GML § 50-e by serving an adequate Notice of Claim; that the City did not pay his claim; and that Plaintiff waited at least 30 days after serving the Notice of Claim before filing the Complaint. Indeed, the City apparently conducted a preliminary examination of Plaintiff's claim as provided by GML § 50-h before Plaintiff filed suit. (See Def. Mem. of Law in Support of Motions In Limine at 3 (referring to Plaintiff having produced a document at his "50-H hearing").)

Accordingly, there is no unfair prejudice to the Defendants arising from a decision permitting Plaintiff to proceed with his state law tort claim despite the insufficient allegations in the Second Amended Complaint. The purpose of the notice of claim statute – "affording [ the municipality] . . . the opportunity to fully investigate and . . . to settle claims without the expense and hazards of litigation," Salesian Soc., Inc. v. Village of Ellenville, 41 N.Y.2d 521, 524, 393 N.Y.S.2d 972 (1977) – has been fulfilled. Under these circumstances, the Court finds that the City Defendants have waived their GML § 50-i defense, and deems the Second Amended Complaint amended to allege the

15

facts necessary to comply with GML § 50-i(1)(b).  See Steimel v. Incorporated Village of Rockville Centre, 965 F. Supp. 366, 374-75 (E.D.N.Y. 1997) (refusing to dismiss claim based on plaintiff's failure to comply with notice of claim requirement set forth in New York Civil Practice Law and Rules § 9802 where defendants first raised issue after opening statements at trial, and sanctioning defendants' counsel on ground that the "timing and presentation of the motion . . . was . . . vexatious, dilatory and disruptive"); Salesian, 41 N.Y.2d at 524 (holding that municipality's choice of litigating claim through trial "precluded it from further relying on the fact that compliance with the notice requirements [of N.Y.C.P.L.R. § 9802's predecessor statute] was neither pleaded nor proved"); Bravo v. City of New York, 122 A.D.2d 761, 762, 505 N.Y.S.2d 647 (2d Dep't 1986) (holding that trial court should have deemed complaint amended to comply with GML § 50-i where defendant conceded that actual notice requirements had been met); Snyder v. Bd. of Educ. of Ramapo Cent. Sch. Dist. #2, 42 A.D.2d 912, 912, 347 N.Y.S.2d 727 (2d Dep't 1973) (without explanation, deeming complaint amended "to plead timely service of the notice of claim" as required by GML § 50-i); Fed. R. Civ. P. 15(a) (court "should freely give leave [to amend pleadings] when justice so requires").

## CONCLUSION

For the reasons stated above, Defendants' motion in limine (Docket No. 69) is GRANTED IN PART AND DENIED IN PART, and Plaintiff's motion in limine (Docket No. 67) is GRANTED.

Dated: New York, New York
June 19, 2009

SO ORDERED.

_Paul G. Gardephe_

Paul G. Gardephe
United States District Judge

16