UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
STEVIE B. TATUM,

                        Plaintiff,

        - against -

THE CITY OF NEW YORK, CORRECTION
OFFICER RENEE JACKSON, individually and
in her official capacity, and TERREEM
MARTIN,

                        Defendants.
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1 / 28 / 2010

**MEMORANDUM OPINION
AND ORDER**

No. 06-cv-4290 (PGG)(GWG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiff Stevie Tatum sought relief under 42 U.S.C. § 1983 and New York state law for severe injuries he suffered as a pre-trial detainee when he was assaulted by other inmates at Rikers Island. (Second Amended Complaint ("Cmplt.") (Docket No. 29) ¶¶ 1-3) He alleged, inter alia, that Defendant Renee Jackson, the correction officer on duty in his Rikers Island dormitory at the time of the assault, was deliberately indifferent to the assault, conspired with the inmates who assaulted him, and aided and abetted the assault. (Id. ¶¶ 10, 50-59, 73-74) Following a five-day trial, a jury rendered a verdict in Tatum's favor as against Jackson, and awarded him $1 million in compensatory damages. The Court entered judgment against Jackson on July 30, 2009. (Docket No. 94) Now pending before the Court is Tatum's motion for attorneys' fees and costs under 42 U.S.C. § 1988. (Docket No. 96) Tatum's motion is granted to the extent stated below.

## I.   BACKGROUND

### 1.   Factual Background

Tatum's Complaint asserted claims against Jackson, the City of New York, and Terreem Martin, one of the inmates who allegedly assaulted him.[1]  (Cmplt. ¶¶ 50-60)  Jackson and the City moved for summary judgment, which was granted in part.  (Docket No. 44)  All claims against the City were dismissed, although it remained potentially liable under a respondeat superior theory in connection with aiding-and-abetting assault and battery claims against Jackson.  (Id. at 31)  Tatum proceeded to trial on a Section 1983 deliberate indifference claim against Jackson; a Section 1983 conspiracy claim against Jackson and Martin; a Section 1983 excessive force claim against Martin and a related aiding-and-abetting claim against Jackson; state law assault and battery claims against Martin; and related state law aiding-and-abetting claims against Jackson.  (Id. at 31)  Tatum's theory at trial was that Officer Jackson aided and abetted the inmate assault he suffered while incarcerated at Rikers Island or was deliberately indifferent to it.  (Docket No. 61, at 2-3 (joint pre-trial order))

At trial, the parties did not dispute the following facts: As of April 28, 2005, Tatum was being detained at Rikers Island as a result of a DWI charge on which he could not make bail.  (Tr. 476:12-15, 493:1-25)  On April 28, after attending the first day of his trial on the DWI charge, Tatum missed the regular bus back to Rikers Island from the courthouse, and he did not arrive back at his assigned dormitory (referred to as "Mod

---

[1] Tatum also asserted claims against Leonard Chin, another inmate who allegedly assaulted him.  (Cmplt. ¶¶ 56-59)  He was unable to locate Chin, however, and did not pursue those claims at trial.  (See Docket No. 61 (joint pre-trial order))

2

2") until approximately 3:30 a.m. on April 29. (Tr. 494:1-11) Defendant Jackson was the correction officer on duty in Mod 2 at that time. (Tr. 184:13-17) Tatum was severely injured by other inmates in the early morning of April 29. As explained by Tatum's medical expert, Dr. Richard Sullivan, Tatum suffered two fractures in his jaw bone and fractures on either side of his upper nasal bones. (Tr. 364:17-20, 368:10-14) Dr. Sullivan testified that the first fracture of Tatum's jaw was caused by "[a] very substantial direct blow" and would have caused "severe pain" (Tr. 365:18-24, 366:7-25), and the second fracture was caused by a "very, very strong blow," and would have caused pain in the range of a nine or ten on a scale of "ten being the worst [pain] you could imagine." (Tr. 369:9-14, 370:1-5) The parties' testimony diverged on other key issues, including the events leading up to Tatum's injury and whether he had been assaulted once or twice by inmates.

The jury found that Tatum had not proven any of his claims against Martin, who pursued a misidentification defense at trial. (Tr. 988:25-989:1, 1120-25) Therefore, the jury did not consider whether Tatum had proven the conspiracy claim or the aiding-and-abetting claims against Jackson. The jury did find, however, that Tatum had proven his deliberate indifference claim against Jackson. (Tr. 1119:21-25) The jury awarded Tatum $1 million in compensatory damages on that claim, but did not award any punitive damages. (Tr. 1121:12-18). Jackson subsequently filed a motion for judgment as a matter of law or, in the alternative, for a new trial. (Docket No. 96) This Court denied that motion on November 3, 2009. (Docket No. 108)

## 2.    Fee Application

Tatum was represented throughout this litigation by attorneys Zachary Margulis-Ohnuma and Adam Perlmutter. (Pltf. Aff. ¶ 2) The initial fee application seeks

3

attorneys' fees in the amount of $238,125 for Mr. Margulis-Ohnuma's work and $248,820 for Mr. Perlmutter's work over the last three and one-half years. (Id. ¶ 7) The application also requests fees for the work of paralegals Alisa Randell and Danielle Smith in the amounts of $16,375 and $11,125 respectively.[2] Finally, Tatum requests costs in the amount of $10,424.34 plus interest. (Id.)

## II.   ATTORNEYS' FEES

In support of the attorneys' fee application, Plaintiff's attorneys submit a summary of their professional accomplishments and qualifications (Pltf. Aff. ¶ 15-24), time sheets for Mr. Perlmutter and Mr. Margulis-Ohnuma beginning in 2005, and time sheets reflecting the work of the two paralegals. (Ex. A, B, C, D) Plaintiff's counsel also submits – for purposes of comparison – a schedule of fees submitted by Weil, Gotshal & Manges LLP in connection with a bankruptcy fee application. (Ex. E).

Tatum requests attorneys' fees at rates of $625 for Mr. Margulis-Ohnuma, $650 for Mr. Perlmutter, and $125 for the paralegals. The fee request totals $514,445. (Pltf. Aff. ¶ 7) While Tatum is entitled to a substantial attorneys' fee award in light of the length and complexity of the litigation and the successful jury verdict, the requested amount is not reasonable and will be reduced.

### A.   Legal Standard

While parties typically must bear their own attorney's fees, 42 U.S.C. § 1988 provides, in relevant part, that "[i]n any action or proceeding to enforce a provision

---

[2]  Plaintiff's counsel supplemented their fee application on December 11, 2009, requesting an additional $42,612.50 in attorneys' fees. (Pltf. Supp. Aff. at 2) This supplemental application will be granted in part, as explained below, pursuant to a reduction in the hourly rates requested. For purposes of clarity, this opinion discusses the initial and supplemental fee applications separately. (See infra, note 19)

of section[] . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]"

"[T]he district court has wide discretion in determining the amount of attorneys' fees to award" a statutorily entitled "prevailing party" in a civil rights case. Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); 42 U.S.C. § 1988(b). A "prevailing party" is any party to an action who "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996) (internal quotation omitted). See also Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790-91 (1989) (holding a "prevailing party" need not have succeeded on the primary issue in the case). "The question of whether a plaintiff is a 'prevailing party' within the meaning of the fee-shifting statutes is a threshold question that is separate from the question of the degree to which the plaintiff prevailed." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998). Here, there is no dispute that Plaintiff is a prevailing party because he won a verdict on his deliberate indifference claim – arguably his central claim – and the jury awarded him $1 million in damages.[3] Given that the threshold requirement for a fee award is met, the key remaining issue is what fee is "reasonable."

The starting point for determining an attorneys' fee award is the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is best

---

[3] See Baim v. Notto, 316 F. Supp. 2d 113, 116 (S.D.N.Y. 2003) (stating that even "though plaintiff had very limited success at trial, obtaining a favorable verdict against only one defendant on only one claim, he is still entitled to prevailing party status. . . . his ratio of success cannot be used to deny him prevailing party status")

5

calculated as "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckhart, 461 U.S. 424, 433 (1983). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that we and other courts have identified as relevant," including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original). Courts must also consider "the complexity and difficulty of the case; . . . the resources required to prosecute the case effectively. . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Arbor Hill, 522 F.3d at 184 (citing the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

       "Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiff's success in the litigation." Robinson v. City of New York, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *7 (S.D.N.Y. Sept. 29, 2009). Work on ultimately unsuccessful claims is compensable as long as those claims are not "wholly unrelated" to the claims plaintiff succeeded on at trial. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) (quoting Grant, 973 F.2d at 101). A downward adjustment may still be appropriate, however, when a plaintiff "succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. A court need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation" to determine the proper award, Seigal v. Merrick, 619 F.2d

6

160, 164 n. 8 (2d Cir. 1980), nor should "[a] request for attorney's fees . . . result in a second major litigation." Hensley, 461 U.S. at 437. The burden is ultimately on the applicant to demonstrate the reasonableness of the hours spent and the rates sought. See id.

While a court is permitted to make adjustments to the "presumptively reasonable fee," there is "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134. See also Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir. 1997) ("if private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court" (internal citation omitted)).

### B.    Jackson's Objections to Plaintiff's Fee Request

Jackson object to Plaintiff's fee request on a variety of grounds, including: (1) that the requested hourly rates are unreasonable and diverge from rates awarded in other cases; (2) that Plaintiff's limited success warrants a reduction in fees awarded; (3) that time spent on certain dismissed claims should be excluded because they are not "inextricably intertwined" with the successful claim; (4) that Plaintiff's fee request is so vague as to make it impossible to determine the reasonableness of the hours expended; (5) that the hours expended are unreasonable and excessive; and (6) that Plaintiff is not entitled to recover from Jackson fees incurred in prosecuting the case against co-defendant Terreem Martin. The Court will first address the reasonableness of the rates requested and hours expended to calculate a presumptively reasonable fee, and will then

consider whether Plaintiff's level of success, or any other factor, warrants a reduction in the presumptively reasonable fee.

## 1.    **Reasonableness of Hourly Rates Requested**

Jackson argues that the rates requested by Plaintiff's counsel are unreasonably high and that the appropriate rate is $200 per hour, which Jackson claims is the prevailing market rate for civil rights litigators in small firms. (Def. Mem. at 4) The Court agrees that the requested rates of $650 and $625 are unreasonable in light of the rates Plaintiff's attorneys actually charge their paying clients and the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (internal citation omitted). The Court finds that rates of $450 for Mr. Perlmutter and $400 for Mr. Margulis-Ohnuma are reasonable. (See Pltf. Reply Aff. ¶ 5)

Determination of the reasonable hourly rate is a factual issue committed to the court's discretion, and is typically defined as the market rate a paying client would be willing to pay. Arbor Hill, 522 F.3d at 183. In determining what rate is reasonable, courts should rely on both evidence submitted by the parties as to the rates they typically charge, Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district." Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682, 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)). The size of the firm may also be considered as a factor if it would affect the hourly rate, "primarily due to varying overhead costs." Cioffi v. N.Y. Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006). In many cases, "current rates, rather than historical rates,

8

should be applied in order to compensate for the delay in payment[.]" LeBlanc-Sternberg, 143 F.3d at 764 (citing Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989)).[4]

Here, Plaintiff's attorneys support their hourly rate request with a fee application submitted by Weil, Gotshal & Manges LLP in a bankruptcy case. (Ex. F) Mr. Perlmutter and Mr. Margulis-Ohnuma do not work at Weil, Gotshal & Manges or a comparably sized law firm, however. Neither are bankruptcy lawyers, not to mention partners in a large firm. The relevant standard for present purposes is what attorneys of comparable experience in civil rights litigation charge as an hourly rate. And "[a] reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation is the attorney's customary rate." Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-170 (S.D.N.Y. 2003); see also Meriwether v. Coughlin, 727 F. Supp. 823, 831 (S.D.N.Y. 1989); Reid v. State of New York, 584 F. Supp. 461 (S.D.N.Y. 1984). Plaintiff's attorneys submit, and Defendant does not dispute, that their standard rates are $450 and $400 per hour. (Pltf. Aff. ¶ 33 n. 33; Pltf. Reply Aff. ¶ 5) Plaintiff's attorneys, however, provide no supporting documentation – such as sample fee

---

[4] Courts in this Circuit now generally apply current rates in awarding attorneys' fees in cases such as this, recognizing that "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the [presumptively reasonable fee] should be 'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (citing Jenkins, 491 U.S. at 283-84) ("compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings"); LeBlanc-Sternberg, 143 F.3d at 764 (instructing district court on remand to apply "current rates, rather than historical rates" in order to "compensate for the delay in payment" in multi-year litigation). While use of current rather than historic rates is subject to the Court's discretion – and historic rates may be applied where compensation for delay is unnecessary or Plaintiff bears some fault for the delay, see Gierlinger, 160 F.3d at 882 – it is now understood that awarding fees based on current rates is an appropriate means of compensating attorneys in protracted litigation, such as here. Grant, 973 F.2d 96.

agreements or affidavits from former clients – of their actual hourly rates aside from the statements made in Mr. Margulis-Ohnuma's affirmations. Nevertheless, rates of $450 and $400 per hour are reasonable in light of the case law discussed below. Accordingly, the Court will credit Plaintiff's attorneys' affirmation that they charge these rates to private clients in comparably complex litigation.

Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates.[5] Defendant argues that Plaintiff's counsel's standard rates are above-market. However, consistent "precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." Vilkhu v. City of New York, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009) (collecting cases). Just as Plaintiff's counsel incorrectly argue that large law firm rates should apply to civil rights litigation done by solo practitioners, Jackson mistakenly asserts that the Court should look to rates charged for junior associates at large law firms. (Def. Mem. at 6)

Reference to large Manhattan firm practice is simply not appropriate in this case, where counsel work in small offices focused on criminal defense work. Even though Plaintiff's attorneys are not experienced in civil rights litigation, they are

---

[5] Courts are instructed to look to market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Gierlinger, 160 F.3d at 882 (internal citation omitted); accord Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997); Gonzalez v. Bratton, 147 F. Supp. 2d 180, 211 (S.D.N.Y. 2001), aff'd, 48 Fed. Appx. 363 (2d Cir. 2002). The relevant community in this case is the Southern District of New York. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).

10

competent and seasoned trial lawyers. In light of their experience and reputation, and the evidence submitted concerning what partners in small civil rights litigation firms charge, see Reply Ex. A, the Court will not apply rates lower than counsel's standard rates.[6] Defendants have offered no evidence that Plaintiff's attorneys' standard rates are unreasonable or in excess of the market rate for skilled trial lawyers. And in light of the fact that comparable cases suggest the opposite,[7] the Court has determined that the standard hourly rates for Mr. Perlmutter and Mr. Margulis-Ohnuma – $450 and $400 respectively – are reasonable.

Defendant also argues that "this case did not present novel or complex issues of law" and "neither the legal issues litigated in this case nor the discovery process support an upward deviation in the hour fee rate to counsel." (Def. Mem. at 9) The Court does not consider rates of $450 and $400 an "upward deviation," but instead appropriate rates of compensation for attorneys skilled in trial work, such as counsel here. While Tatum's claims were not legally complex, the case was nonetheless challenging and extremely hard-fought; a plaintiff's verdict was by no means inevitable. The result is a tribute to the skills, talent, and perseverance Plaintiff's counsel brought to the case.

---

[6] Plaintiff's attorneys argue that "we were able to achieve the result we did because we have been investigating facts, drafting pleadings and motions, conducting discovery, making legal arguments, preparing cases for trial, and presenting cases to juries for a combined total of 27 years." (Pltf. Reply Aff. ¶ 4) Such experience must be taken into account.

[7] Bernier v. Papagianopolous, No. 99 Civ. 2000 (MHD), 2006 WL 2819590, at *1-2 (S.D.N.Y. Oct. 2, 2006) (awarding $400 per hour in attorneys' fees to lead lawyer in §1983 action); Rainola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003) (finding rate of $400 per hour reasonable for solo and small firm practitioners).

Finally, Defendant argues that the requested paralegal rate of $125 per hour is unreasonable and that rates between $50 and $100 are typical in civil rights litigation in this district. The case law, however establishes that $125 is within the range of rates typically awarded for paralegal work in this District, and that is the rate that will be applied. See, e.g., Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558, 2008 WL 1166309, at *3 (S.D.N.Y. Apr. 7, 2008) (finding that "there is ample support for $ 150 per hour as a reasonable rate for paralegals in this District"); Morris v. Eversley, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (using a paralegal rate of $125 per hour).

## 2.    Reasonableness of Number of Hours Billed

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 189-90. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, courts must look at both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and also "to its own familiarity with the case . . . and its experience generally." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Where a plaintiff submits deficient or incomplete billing records demonstrating the number of hours expended, courts should reduce the fee award requested. See Hensley, 461 U.S. at 437 n. 12 (attorneys seeking fee awards must, at least, "identify the general subject matter of his [or her] time expenditures"). Courts may exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or make an across-the-board reduction in the

12

number of hours.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  Courts

base the hours inquiry not on what appears necessary in hindsight, but on whether "at the

time the work was performed, a reasonable attorney would have engaged in similar time

expenditures." Grant, 973 F.2d at 99.

Here, Plaintiff's attorneys supplied compiled time records based on their

contemporaneous notes and the notes of their paralegals.  (Pltf. Ex. A, B, C)  Plaintiff

seeks an award for 381 hours of Mr. Margulis-Ohnuma's time, 382.8 hours of Mr.

Perlmutter's time, and 220 hours of paralegal time.  (Aff. ¶ 7)

### a.    Vague Entries and Block-Billing

Jackson contends that unreasonably vague entries and "block-billing

permeate[] plaintiff's bills" and that "[t]he hours should be reduced because it is

impossible to determine both the quantity of time and the reasonableness of the time

spent on various tasks or the time spent on each particular plaintiff and each individual

claim."[8]  (Def. Mem. at 15)  Defendants object to billing entries such as:  "Review of

Defendants' disclosure pursuant to FRCP Rule 26(a) and related materials"; "Review of

city automatic document production, including prison paperwork and initial medical

records"; "Review additional discovery provided by City"; "Trial Prep. Review and

designate depositions.  Conference Danielle Smith. Conference ADP: re city additions to

JPTO"; "Conference client.  Prepare letter motion to preclude Buford.  Conference call

corporate counsel.  Conference ADP re: motion to preclude Buford.  Call Dr. Sullivan.

---

[8]  Block billing is the practice of "lumping" together time spent on different tasks rather
than itemizing each discrete task as a separate line item.

Letter to defendants re: expert"; and "Trial, trial prep." (See Def. Br. at 16) The standard, however, is less strict than Defendant argues.

Courts may deny compensation where the billing information submitted is "too vague to sufficiently document the hours claimed." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998). Entries or records lacking sufficient detail "cannot be evaluated for reasonableness," and therefore do not meet the standard for a fee award. Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001). See Kirsch, 148 F.3d at 172 (upholding reduction of award by 20% for vague entries such as "letter to court," "staff conference," or "work on motion"); see also Trs. of the Bricklayers v. Helmer-Cronin Constr., Inc., No. 03 Civ. 748 (MDF), 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (20% reduction in the total number of hours billed where the majority of entries contained vague statements such as, "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research"). However, a "defendant['s] complaint about lack of specificity in the work summaries does not, in itself, justify . . . a substantial reduction in compensable time." Raniola, No. 96 Civ. 4482 (MDD), 2003 WL 1907865, at *4.

In Raniola, for example, the court found some of the time entries to be "fairly general, [but it ruled that] terms such as 'case preparation' or 'meeting' . . . are sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed." Id.; see also Tran v. Tran, 166 F.Supp.2d 793, 800 (S.D.N.Y. 2001); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 970 F. Supp. 333, 342 (S.D.N.Y.1997) ("where an attorney's time entries are vague, courts may attempt to decipher them by reference to the context in which these entries

occur to determine what work was involved" (internal citation and quotation marks omitted)). "The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency." Raniola, 2003 WL 1907865, at *4 (citing Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 894 (S.D.N.Y. 1994)). While "block-billing" is disfavored and may lack the specificity required for a fee award, it is not prohibited as long as the Court can determine the reasonableness of the work performed. Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999). Thus, "'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" United States Football League v. National Football League, 704 F. Supp. 474, 477 (1989) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 473 (2d Cir. 1974)). Courts must look "at the big picture." Burr v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990). Because the reasonable number of hours spent on each case is fact and context specific, the inquiry is "committed to the discretion of the court." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

With respect to Jackson's complaint about the vagueness of certain billing entries, Plaintiff's counsel's reply affirmation (at 10-12) provides supplemental detail that, when coupled with the context in which the allegedly "vague" or "block-billed" time entries were made, is sufficient to support the number of hours billed. Accordingly, this Court will not reduce the fee award because of allegedly vague entries or block-billing.

### b.    **Excessive Hours**

Jackson further contends that Plaintiff seeks compensation for work that was excessive, unreasonable or duplicative. (Def. Mem. at 17) Defendant argues that an excessive and unreasonable number of hours were billed for drafting and amending the pleadings in this case, for conducting discovery, for unsuccessful motions, for time not related to federal claims, and for unnecessary research. (Id. at 17-19) Defendant also argues that the billing records indicate that time for administrative tasks was inappropriately billed at attorney rates, and further argues that the rate and time billed for travel should be reduced. (Id. at 19-21) Defendant contends that the Court should either reduce the fee award by declining to award fees for the excessive hours referenced above or, in the alternative, reduce the fee award across-the-board. (Id. at 20)

While, in hindsight, Plaintiff's counsel could have eliminated certain research as to claims that proved unsuccessful at trial, the time devoted to these issues was not unreasonable when viewed in context. Grant, 973 F.2d at 99. As discussed above, the Court must focus on the reasonableness of the total hours claimed, and 30.8 hours spent on researching and drafting a complaint (Def. Br. at 18), 105 hours spent on discovery-related matters (Id.), and nearly 300 hours spent on trial preparation (Id.), for example, is not unreasonable in light of the "big picture." [9] See Burr, 748 F. Supp. at 100. The modest amount of background research that Defendant argues was unnecessary

---

[9]  Plaintiff's counsel disputes these calculations, arguing that their time records demonstrate only 26.3 attorney hours spent on drafting the complaint, 61.8 attorney hours spent on discovery, and 157.5 attorney hours on trial preparation. (Pltf. Reply Aff. ¶¶ 15-18) The Court will not comb through the record to calculate the precise number of hours spent on each task. Even assuming that Defendant's estimates are more accurate than Plaintiff's, the time spent on these tasks was not excessive.

is likewise not unreasonable, even though it was not used at trial.[10]  (See Def. Br. at 20)

In sum, the Court has carefully reviewed the fee application and supporting

documentation along with Jackson's objections and does not believe that an across-the-

board reduction is warranted.[11]

The Court will, however, make deductions for travel time and for certain

clerical or administrative work billed at attorney rates.  While courts have in the past

approved fee applications in civil rights litigation that include travel time – generally at

half the attorney's reasonable rate, see, e.g., Hutchinson v. McCabee, No. 95 Civ.

5449(JFK), 2002 WL 930842, *4 (S.D.N.Y. Aug. 15, 2001); Gonzalez v. Bratton, 147 F.

Supp. 2d 180, 213 n. 6 (S.D.N.Y. 2001); Funk v. F & K Supply, Inc., 43 F. Supp. 2d 205,

230 (N.D.N.Y. 1999) – in this Court's experience, clients resist paying for travel time.

Accordingly, the fee award will not include travel time billed by Mr. Perlmutter (11

hours), by Mr. Margulis-Ohnume (17.3), or by their paralegals (5 hours).  (Pltf.  Ex. C)

Defendant also points to numerous attorney billing entries reflecting

administrative tasks that could have been completed by paralegals, such as filing

complaints, preparing materials for review by an expert witness, drafting and notarizing

an affidavit of service, and preparing a waiver of service of summons.  (Def. Br. 19)

Defendant also cites numerous entries charging time for "review of ECF posting."  (Id.)

---

[10]  It should be noted that Plaintiff's counsel has not sought compensation for time spent
by Mr. Perlmutter's associate Lyle Smith and the work of several paralegals prior to
2009. (Pltf. Aff. ¶¶ 26 n. 3, 27)

[11]  While counsels' inexperience in civil rights litigation might warrant a time reduction –
given that inexperienced attorneys generally require more time to complete tasks – the
Court believes that this variable is adequately addressed by the reduction in requested
hourly rate imposed above.

17

Plaintiff's counsel's reply affirmation addresses some of these objections but fails to demonstrate that the work described in all of these entries required an attorney's attention.

Courts regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks. See Nicholson v. Williams, No. 00 CV 2229 (JBW), 2004 WL 4780498, at *19-20 (E.D.N.Y. April 5, 2004); Vitale v. Abbott Laboratories, No. 02 Civ. 4623 (JBW)(JMA), 2007 WL 3307212, at *2 (E.D.N.Y. Nov. 6, 2007). Attorneys engaged in clerical tasks "should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 540 (S.D.N.Y. 2008). Despite Plaintiff's assertion that it is Mr. Perlmutter's regular practice to oversee the filing of civil cases and that he must prepare affidavits of service because he does not employ a process server, billing for this time at attorney rates is inappropriate. (Pltf. Reply Aff. ¶ 21) Moreover, "[c]ontrary to plaintiff's contention, monitoring a case's progress on ECF cannot be characterized as the non-delegable responsibility of the attorney," Destefano v. Astrue, No. 05-CV-3534 (NGG), 2008 WL 623197, at *4 (E.D.N.Y. Mar. 4, 2008), and this time will also not be reimbursed at attorney rates. Reviewing and updating a waiver of service is likewise paralegal work. (Pltf. Reply Aff. ¶ 21) Accordingly, the Court will reduce the rates charged for 11 hours of work – 5.5 hours for each attorney – to the paralegal rate of $125 per hour.[12]

---

[12] The 1.8 hours billed for "preparing materials to forward to Dr. Sullivan for review," however, will not be compensated at a reduced rate given Plaintiff's counsel's explanation that "[t]his task involved not packaging and mailing the materials, but culling and organizing them so that the expert witness could review them efficiently and

### 3.    **Plaintiff's Level of Success Merits a Partial Fee Reduction**

Jackson argues that the fee request over-compensates Plaintiff's attorneys for their time given the degree of success Tatum achieved in pre-trial motion practice and at trial. (Def. Mem. at 10) The Supreme Court has stated that "two questions must be addressed" in determining whether the results obtained by a plaintiff should lead to a reduction in a fee award: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" Hensley, 461 U.S. at 434. Here, the fee award will be reduced to reflect Plaintiff's lack of success as to certain severable claims, but no other success-related reduction will be imposed.

### a.    **Unsuccessful Claims**

Defendant notes that Tatum was unsuccessful on 12 of the 13 initial claims pleaded in his Complaint and 6 of the 7 claims presented to the jury. Jackson further argues that the hours spent on these unsuccessful claims should be excluded from any fee award because "plaintiff fails to make any showing [] as to how these unsuccessful claims are inextricably intertwined with the deliberate indifference to safety and welfare claim" – the one claim Tatum prevailed on. (Def. Br. at 11-13)

---

understand counsel's prevailing hypotheses." (Pltf. Reply Aff. ¶ 21) See Nicholson, 2004 WL 4780498, at *19 ("organizational tasks that require an understanding of the case" may be properly billed at attorney rates) (citing Marisol A. v. Giuliani, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000); Sulkowska v. City of New York, 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001)) (holding that a "firm's preparation of trial exhibits should [not] be excluded as a clerical expense, given the amount of organization required and the fact that such assembly required a substantial understanding of the case").

In resolving this issue, the Court must determine "whether the claims on which plaintiff[] failed are sufficiently related to the prosecution of claims on which he succeeded, such that the time spent on the failed claims should be compensated." Robinson, 2009 WL 3109846, at *28; see also LeBlanc-Sternberg, 143 F.3d at 762 ("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded."). In calculating the total number of reasonable hours eligible for attorneys' fees, courts should subtract any "hours dedicated to severable unsuccessful claims." Quaratino, 166 F.3d at 425 (emphasis added). Courts need not reduce a fee award, however, where the "successful and the unsuccessful claims were interrelated and required essentially the same proof." Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir. 1997) (collecting cases); Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004) (noting that when claims contain "common core facts" they are not severable and attorneys fees are properly awarded).

> As a general matter,
>
> such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley, 461 U.S. at 435.

In arguing for a reduction based on Tatum's unsuccessful claims, Jackson focuses on the elements of the different claims Tatum pursued prior to summary judgment and at trial. (Def. Br. at 12-14) "However, [the Supreme Court] recognizes that claims can be intertwined based on common facts as well as common legal theories." Green, 360 F.3d at 98. See Hensley, 461 U.S. at 435; see also Webb v. Sloan, 330 F.3d 1158, 1169 (9th Cir. 2003) (even without commonality of law, plaintiff's claims were related for the purpose of awarding fees where all of plaintiff's "claims arose out of a common core of facts and a common course of conduct: plaintiff's arrest, detention, and prosecution"). For this reason, it is not dispositive here that the elements of a deliberate indifference to safety and welfare claim are different from the elements of deliberate indifference to medical needs, municipal liability, negligent hiring, and negligence, particularly where all of Tatum's claims arise from the same assault at Rikers Island.

Section 1988 does not prohibit or discourage plaintiffs from pursuing alternative theories of liability, as Tatum did here. Indeed, Hensley explains that civil rights plaintiffs may "in good faith . . . raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." Hensley, 461 U.S. at 435. Accordingly, this Court will not reduce the fee award across-the-board merely because Tatum unsuccessfully pursued a large number of claims.

Certain of Tatum's claims, however, are not "inextricably intertwined." For example, the municipal liability claim dismissed at summary judgment requires proof of facts entirely separate from a deliberate indifference to safety and welfare claim. The City of New York could be found liable here only if its policies and practices led to a

deprivation of Plaintiff's constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Similarly, the negligent hiring claim – likewise dismissed at summary judgment – requires proof of facts concerning Jackson's hiring that is entirely separate from the proof necessary to make out a deliberate indifference claim. Because the municipal liability and negligent hiring claims do not arise from the same core facts or the same legal theory as Tatum's successful deliberate indifference claim, the Court will reduce the fee award for time spent on these claims. Given that the time spent on these claims is not readily ascertainable from counsel's billing records, an across-the-board percentage reduction is appropriate. See, e.g., Kirsh v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("in dealing with [] surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as 'a practical means of trimming fat from a fee application'"). Rather than comb through all the records making assumptions about what time was spent on each claim, the Court will reduce the presumptively reasonable fee by 15% to account for the lack of success of Tatum's severable claims. The Court finds a 15% reduction reasonable in light of the time devoted to the municipal liability and negligent hiring claims in the parties' summary judgment papers (See Docket Nos. 36 & 40) and the reasonable amount of time Plaintiff's counsel would have spent on these claims during discovery.

       With respect to Tatum's remaining unsuccessful claims – for deliberate indifference to medical needs and negligence (dismissed on summary judgment) and claims of conspiracy, excessive force, assault, battery, aiding and abetting excessive force, and aiding and abetting assault and battery (all of which were rejected at trial) – no reduction in the fee award is appropriate. All of these claims – including those that name

22

inmate Martin – turn on the assault Tatum suffered at Rikers Island and Officer Jackson's role with respect to that assault. Because these claims arise from the same core set of facts applicable to Tatum's successful deliberate indifference claim, they are not severable.[13]

### b.    Tatum's Level of Success at Trial

"The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005). In Hensley, the Supreme Court explained that the presumptively reasonable fee must be assessed in conjunction with whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" Hensley, 461 U.S. at 434. "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (internal quotation omitted). "If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith."

---

[13]  Relying on Russo v. New York, 672 F.2d 1014, 1022 (2d Cir. 1982), Jackson argues that Plaintiff is not entitled to recover fees related to work on his state law claims. Jackson misreads Russo. That case merely provides that attorneys' fees cannot be awarded under § 1988 where the plaintiff does not prevail on any of his federal claims. Here, Tatum prevailed on a Section 1983 claim. Accordingly, Russo is inapposite.

Id., citing Hensley, 461 U.S. at 436. See Robinson, 2009 WL 3109846, at *30-31 (summarizing this doctrine).

In Hensley, the Supreme Court held that when the results obtained are "excellent," the party seeking attorneys' fees should obtain a fully compensatory fee, despite the fact that the case may have been less than completely successful. Hensley, 461 U.S. at 431. Even though all but one of Tatum's claims were unsuccessful, the $1 million jury verdict obtained at trial was a good outcome for Tatum. The Court has already made an across-the-board reduction of 15% in recognition of Plaintiff's unsuccessful municipal liability and negligent hiring claims. No further success-related reduction in the fee award is warranted.

### 4. Total Fee Award

For the reasons stated above, the presumptively reasonable fee will be calculated based on (1) a rate of $450 per hour for Mr. Perlmutter and 366.3 approved hours; (2) a rate of $400 per hour for Mr. Margulis-Ohnuma and 358.2 approved hours; and (3) a rate of $125 per hour for paralegal work and 226 approved hours. The resulting fee of $336,365.00 will be reduced by 15% to $285,910.25 to account for Tatum's unsuccessful claims. Based on Plaintiff's attorneys' supplemental fee application dated December 11, 2009, $30,567.50 in fees will be added to this sum.[14] Accordingly, Plaintiff is awarded a total of $321,788.12 in attorneys' fees.

---

[14] On December 11, 2009, Plaintiff's attorneys supplemented their fee application with an affirmation requesting an additional award of attorneys' fees and costs relating to expenses incurred after the initial fee application was submitted. (Pltf. Supp. Aff. at 2) Most of these new expenses relate to work on various post-trial motions, including the fee application. None of this work relates to severable, unsuccessful claims. There is likewise no attorney time billed for administrative or clerical tasks. Counsel seek compensation for 24.5 hours billed by Mr. Perlmutter, 31.2 hours billed by Mr. Margulis-

24

## III.  COSTS

A prevailing party is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg, 143 F.3d at 763 (internal quotation marks omitted).  Under federal civil rights law, costs awarded to successful parties may "include not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal marketplace." Robinson, 2009 WL 3109846, at *34-35 (citing U.S. Football League, 887 F.2d at 416 (holding that reasonable, identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including photocopying, travel and telephone costs); Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001).  Recovery is not permitted, however, for costs associated with routine office overhead, see LeBlanc-Sternberg, 143 F.3d at 763, or for expert fees associated with § 1983 claims.  Wilder v. Bernstein, 975 F. Supp. 276, 287 (S.D.N.Y. 1997).

Plaintiff's counsel requests an award of $10,424.34 in costs (Pltf. Ex. D; Supp. Aff. at 2) for expenses that include filing fees, process server fees, subpoena fees, expert fees, exhibit preparation and office supplies, mailings, photocopies, meals and travel.  (Id.)  The documentation submitted reflects $9,324.02 in expenses.  Expenses not supported by documentation will not be considered.  See, e.g., Kronfeld v. Transworld

---

Ohnuma, and 57.5 hours billed by a paralegal.  (Id.)  With the exception of one hour of paralegal travel time – which will be deducted – the Court finds that the hours reflected in the supplemental fee request are reasonable and properly supported, and will award an additional amount of fees for this time at the rates approved above.

Airlines, Inc., 129 F.R.D. 598, 610 (S.D.N.Y. 1990) (disallowing costs because certain expenses were insufficiently documented).

Defendant objects to Plaintiff's cost application to the extent it seeks reimbursement for photocopying, meals, travel, office supplies, expert fees and expenses associated with prosecuting the case against co-defendant Tarreem Martin. Reimbursement for meals, supplies such as binders, and expert fees is not permitted and will be excluded from the costs award. The other costs sought by Plaintiff are recoverable and reasonable.

"First, meals that are not required by out-of-town travel are not compensable." Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05 Civ. 6757(LTS)(MHD), 2009 WL 466136, at *6 (S.D.N.Y. Feb. 20, 2009), citing Rozell v. Ross-Holst, 576 F. Supp.2d 527, 547 (S.D.N.Y. 2008). Thus, the six lunches billed on June 4, 17, 22-24 and July 7, 2009, will not be reimbursed. (Pltf. Ex. D) Costs will likewise not be awarded for binders and related supplies. Courts in this Circuit generally decline to award costs for binders and other exhibit-related supplies, as they are part of general office overhead and thus already compensated for through attorneys' fees. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (finding that ordinary overhead is properly treated as part of an attorney's fee award rather than as costs); Close-Up Int'l, Inc. v. Berov, No. 02-CV-2363 (DGT), 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007); Vernon v. Port Auth., 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002) (finding that exhibit tabs fall within the category of overhead costs or supplies and are not a compensable cost); Rees v. GE, 144 F. Supp. 2d 138, 144 (N.D.N.Y. 2001) (denying costs for trial binders and indexes as "ordinary overhead"). Finally, the law is clear that

counsel may not recover under Section 1988 for expert fees paid in connection with a Section 1983 action. Wilder, 975 F. Supp. at 287.

Plaintiff's counsel's remaining reimbursement requests, however, are reasonable. "Local transportation costs for attorneys that are billed to clients separately and not absorbed within the hourly rates charged to clients are generally recoverable." Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, 2009 WL 466136, *7. Plaintiff's counsel may also recover photocopying costs, "but [] must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." Id. at *25; see also Evergreen, 95 F.3d at 173 (denying recovery where there was a lack of documentation concerning what was copied and the number of copies made). While the receipts submitted by Plaintiff's counsel do not provide this level of detail, they do indicate that the photocopying was performed by vendors such as Staples, which presumably charge market rates, and these expenses appear reasonable. (Reply Ex. D)

Plaintiff's counsel has also submitted documentation reflecting a transcript fee, fees for printing briefs, fees for shipping briefs to the Court, PACER charges, and fees associated with obtaining documents necessary for the expert testimony Plaintiff offered at trial. (See Pltf. Jan. 7, 2010 Letter) These expenses are reasonable and are of the type permissible for reimbursement, which Defendants do not contest. Accordingly, these expenses will all be included in the costs award.

Defendant's remaining objection is that all expenses related to the claims against co-defendant Martin are non-compensable. The Court determined above, however, that the claims against Martin were inextricably intertwined with Tatum's

successful claim at trial, and did not merit any reduction in the attorneys' fee award. The same logic applies to reimbursable costs.[15]

      Plaintiff also seeks interest on the costs award. (Pltf. Aff.¶35) Courts in this Circuit have awarded interest on the costs incurred during litigation. See Vilkhu, 2009 WL 1851019, *20; Rozell v. Ross-Holst, 576 F.Supp.2d at 548. Accordingly, this Court will award interest on the costs award at the rate specified in 28 U.S.C. § 1961(a).[16]

      For the foregoing reasons, Plaintiff will be awarded costs in the amount of $4,023.62 plus interest.

---

[15] This is a moot point in any event, because Plaintiff's counsel failed to submit documentation for the expenses Defendant challenges as Martin-related. Accordingly, the Court denies reimbursement for these expenses other than $5.90 in cab fare.

[16] This statute provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a).

## CONCLUSION

To the extent and for the reasons stated above, Plaintiff's motion for attorneys' fees and costs (Docket No. 96) is GRANTED in the amount of $321,788.12 in attorneys' fees and $4,023.62 in costs.

The Clerk of the Court is directed to calculate interest on the costs award in accordance with 28 U.S.C. § 1961(a).

Dated: New York, New York  
      January 28, 2010

SO ORDERED.

Paul G. Gardephe  
United States District Judge